Filed 6/18/15, see concurrence, Banke, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JOSE SAEZ,<br><br>     Defendant and Appellant. | A138786<br><br>(San Francisco County<br>Super. Ct. No. 206048) |

A jury found Jose Saez guilty of attempted murder and found true allegations that the crime was willful, deliberate, and premeditated, that he personally inflicted great bodily injury on the victim, and that he personally used a deadly weapon.[1] The trial court found he was the same person convicted of two prior crimes in Wisconsin (the identity finding), and after the jury found the convictions true, the court ruled that they were serious felonies and strikes.[2]

On appeal, Saez raises four main categories of arguments. First, he contends the premeditation allegation was improperly tried because it had previously been dismissed

---

[1] The attempted murder charge and the premeditation allegation were brought under Penal Code sections 187, subdivision (a) and 664. The great-bodily-injury allegation was brought under Penal Code section 12022.7, subdivision (a), and the deadly-weapon allegation was brought under Penal Code section 12022, subdivision (b)(1). Saez was also convicted of a misdemeanor count of possession of drug paraphernalia brought under Health and Safety Code section 11364, subdivision (a) and acquitted of a felony count of receiving or buying stolen property brought under Penal Code section 496, subdivision (a), neither of which is at issue in this appeal. Further statutory references are to the Penal Code unless otherwise indicated.

[2] The prior Wisconsin convictions were alleged to be serious felonies and strikes under sections 667, subdivisions (a)(1), (d), and (e) and 1170.12, subdivisions (b) and (c).

1

under section 995. Second, he contends the premeditation, great-bodily-injury, and identity findings were not supported by sufficient evidence. Third, he contends the identity finding, even if supported by sufficient evidence, violated the Sixth Amendment. Finally, he contends the trial court's determination that one of the Wisconsin convictions—for false imprisonment while armed—was a strike violated state law and the Sixth Amendment.

We affirm in part and reverse in part. We sustain the attempted murder conviction, the great-bodily-injury and identity findings, and one of the strike determinations. But we reverse the premeditation finding because premeditation was improperly re-alleged after the allegation was dismissed under section 995. And we reverse the determination that the conviction for false imprisonment while armed constituted a strike. Although this determination comported with *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*), it was incompatible with the more recent United States Supreme Court decision in *Descamps v. United States* (2013) 570 U.S. __, 133 S.Ct. 2276 (*Descamps*), which makes clear that the Sixth Amendment prohibits a court from increasing a criminal sentence based on facts related to a prior conviction when those facts were not necessarily established by the conviction. Accordingly, we remand for resentencing.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

On May 6, 2007, Saez assaulted a female victim with a garrote—a wire weapon used for strangulation—on a San Francisco street in broad daylight.[3] A witness called the police after seeing Saez "stomping" on the victim as she lay on the sidewalk. Officer James Barber located Saez near the scene and detained him. Saez volunteered that "[t]he bitch was already dead" and was bleeding from her mouth when he came across her.

---

[3] Portions of the attack were captured by a security camera, and the footage was shown to the jury at trial.

Officer Barber found a homemade garrote in Saez's jacket pocket. Saez's jacket was bloodstained, and the garrote had hair and skin attached to it. Later DNA testing established that both the victim's and Saez's blood was on the jacket, and the victim's blood was on the garrote.

Officer Lynn Reilly found the victim where she had been assaulted. Officer Reilly described the victim as having "blood all over her face," and she noticed blood on a garage door near the victim's head. The officer testified that the victim was unconscious and there was a "gurgling, labored breathing sound coming from her mouth, and there was blood that appeared to be coming out of her left ear." Sergeant Carolyn Lucas, who was also at the scene, testified that the victim was "either unconscious or barely conscious."

The victim was taken to the hospital. The attending trauma surgeon, Jan Horn, M.D., testified that when the victim was admitted she had lacerations on her neck, tongue, and fingers, and blood around her nostrils and mouth. She also had fractured bones near her eye socket and cheek, which were consistent with having had her face "stomped" on. Dr. Horn explained that the lacerations on the victim's neck were not very deep, although the victim needed stitches for a wound on one of her fingers. The victim remained in the hospital for two days, during which time she was kept under continuous monitoring and received supplemental oxygen because swelling in her throat threatened to "compromise . . . her ability to breathe." She did not testify at trial, and no evidence was presented about her recovery after she left the hospital.

A felony complaint charged Saez with one count of attempted murder and alleged, in relevant part, that the crime was willful, deliberate, and premeditated, that he personally inflicted great bodily injury, and that he personally used a deadly weapon. After a preliminary hearing, the magistrate found there was sufficient evidence of premeditation and great bodily injury but insufficient evidence of use of a deadly weapon.

The People subsequently filed an information that included the charge of attempted murder with the same accompanying allegations of premeditation, personal

3

infliction of great bodily injury, and, despite the magistrate's ruling, personal use of a deadly weapon. The information also added an allegation that Saez was previously convicted in Wisconsin of armed robbery, a serious felony.

Saez filed a motion under section 995 to dismiss the attempted-murder count and its accompanying allegations. The trial court denied the motion as to the attempted-murder count and deadly-weapon and great-bodily-injury allegations but granted it as to the premeditation allegation. The minute order, however, incorrectly reported that the section 995 "[m]otion is denied." And despite the court's ruling, the second amended information (the operative version) included the premeditation allegation. That version also added an allegation that another prior conviction in Wisconsin, for false imprisonment while armed, was also a serious felony.

A jury found Saez guilty of attempted murder and found true the allegations that the crime was willful, deliberate, and premeditated, that he personally inflicted great bodily injury, and that he personally used a deadly weapon. The trial court found that he was the person who had suffered the two prior convictions in Wisconsin, the jury found the prior convictions true, and the court determined that they were serious felonies and strikes. After denying his motion to strike the prior convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero* motion), the court sentenced Saez to a total term of 39 years to life in prison, comprised of terms of 25 years to life for premeditated attempted murder as a third strike,[4] three years for infliction of great bodily injury, one year for use of a deadly weapon, and five years each for the two prior convictions of serious felonies.[5]

---

[4] Two abstracts of judgment appear in the record, and the more recent one, filed on May 24, 2013, incorrectly states that Saez was sentenced to 39 years to life for the attempted murder instead of 25 years to life. The abstract of judgment prepared after Saez is resentenced should not repeat this error.

[5] The five-year terms were imposed under section 667, subdivision (a)(1). Saez also received a concurrent term of six months in county jail for the conviction of possession of drug paraphernalia.

## II.

### DISCUSSION

#### A.     *The Premeditation Allegation Was Improperly Tried Because It Had Previously Been Dismissed by a Judge Other Than the Trial Judge.*

Saez contends his conviction for attempted premeditated murder cannot be sustained because the premeditation allegation was dismissed and not properly re-alleged.[6] We agree.

The premeditation allegation had an unusual procedural history. As mentioned above, a magistrate found sufficient evidence of premeditation at the preliminary hearing. The original information was then filed, and Saez brought a motion under section 995 to dismiss parts of it, arguing there was insufficient evidence that the attempted murder was premeditated, the garrote was a deadly weapon, or the victim sustained great bodily injury. At a hearing on the motion, Judge Cynthia Lee ruled, "The [section] 995 [motion] as to . . . premeditation and deliberation will be granted. The [motion] as to the [allegation under section] 12022.7 [infliction of great bodily injury] and the [allegation under section] 12022[, subdivision (b])(1) [using a deadly weapon] is denied." Notwithstanding Judge Lee's oral ruling granting the motion as to the premeditation allegation, a minute order incorrectly reported that the section 995 "[m]otion is denied."

Over three years later, the People filed a first amended information that included a premeditation allegation. At a subsequent hearing before a different judge, Judge Anne-Christine Massullo, and with new counsel appearing for both sides, Saez's trial counsel remarked that his notes showed the count of receiving or buying stolen property had been stricken at the preliminary hearing. He did not, however, mention the premeditation allegation. Judge Massullo reviewed the charges and noted there had been a section 995 motion. Apparently relying on the erroneous minute order, the court clerk then incorrectly stated, "There was a [section] 995 [motion] on March 9th of [20]09. That was

---

[6] Saez alternatively argues that his trial counsel rendered ineffective assistance of counsel by not objecting to the re-allegation of premeditation. We need not reach this issue, as the Attorney General does not contend that the re-allegation claim was forfeited by any failure to object, and we consider that claim on the merits.

denied." Judge Massullo asked the parties about the substance of the section 995 motion, and Saez's counsel replied, "I'm going to shorten this. I knew there was a [section] 995 [motion]. I thought from [prior] counsel's notes on the information that it said stricken, that that was granted as [to the stolen-property count], so it's my mistake."[7] Saez's counsel then waived formal arraignment on the first amended information, and no motion was made to dismiss any portion of it.

Before trial, the People filed a final, second amended information that still charged Saez with premeditated attempted murder. Again, Saez's trial counsel waived formal arraignment, and no motion was made to dismiss any portion of this version of the information.

Saez argues that the premeditation allegation was wrongly tried because the People "were not free to simply disregard [Judge Lee's] ruling," which was binding on Judge Massullo unless and until it was overturned. He is right. A trial court "generally has the authority to correct its own prejudgment errors." (*In re Alberto* (2002) 102 Cal.App.4th 421, 428.) "Different policy considerations, however, are operative if the reconsideration is accomplished by a *different* judge[, and] . . . the general rule is just the opposite: the power of one judge to vacate an order made by another judge is limited." (*Id.* at p. 427, italics added.) "For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge [improperly] places the second judge in the role of a one-judge appellate court," and thus "an order ' " ' "made in one department during the progress of a cause can neither be ignored nor overlooked in another department . . . ." ' " ' " (*Id.* at pp. 427-428.)

This principle was applied in *In re Kowalski* (1971) 21 Cal.App.3d 67. In that case, a first judge denied the defendant's section 995 motion. But a second judge later granted a renewed section 995 motion after declaring a mistrial. Effectively reinstating

---

[7] In fact, the section 995 motion was also granted as to the count of receiving or buying stolen property. As mentioned above, however, Saez was ultimately acquitted of that count.

the case, the first judge then set a new trial date and fixed bail on the belief that the second judge "had acted in excess of jurisdiction in granting the motion under section 995" after it had previously been denied. (*Id.* at pp. 69-71; see also *In re Alberto*, *supra*, 102 Cal.App.4th at pp. 428-429 [discussing *Kowalski*].) The Court of Appeal stated that, in the absence of changed circumstances "hav[ing] a significant bearing on the question whether [the] defendant was indicted or committed without probable cause," the second judge's granting of the section 995 motion "was an abuse of discretion and was error [because it overturned the first judge's denial of the section 995 motion], but it was not a jurisdictional error." (*Kowalski*, at pp. 70-71.) As a result, since the People never appealed the ruling dismissing the case and "permitted it to become final," that ruling remained binding on the first judge. (*Id.* at p. 71.) And once the second judge dismissed the case, the first judge no longer had jurisdiction and the subsequent "orders setting a new trial date and fixing bail"—which were the only orders still subject to appellate review—"were void." (*Ibid.*)

In light of this authority, we agree with Saez that Judge Massullo lacked the ability to permit the information to be amended to re-allege premeditation. Judge Lee's ruling established that Saez was "committed without reasonable or probable cause" supporting the premeditation allegation, and it dismissed the allegation. (§ 995, subd. (a)(2)(B); see also *Huynh v. Superior Court* (1996) 45 Cal.App.4th 891, 894-895 [premeditation allegation subject to dismissal under section 995 for lack of evidence at preliminary hearing].) To avoid the effects of this ruling, the People could have either appealed it (see § 1238, subd. (a)(1)) or filed a new accusatory pleading that would have required a new preliminary hearing (see *Anderson v. Superior Court* (1967) 66 Cal.2d 863, 864, 867), but they did neither. As a result, the reinstatement of the premeditation allegation through amendment of the information was improper.

Nor does this case "fall within either of two narrow lines of cases that appear to authorize one trial judge to reconsider an issue already decided by a colleague: one, where the first judge is unavailable [citation], or two, where the first order was made through inadvertence, mistake, or fraud." (*In re Alberto*, *supra*, 102 Cal.App.4th at

7

p. 430.) Indeed, there is no suggestion in the record that a reconsideration of Judge Lee's ruling was even sought or intended, as the clerk's error in describing the outcome of the section 995 motion suggested that the premeditation allegation had never been dismissed. In sum, Judge Lee's ruling remained binding on subsequent superior court judges in the case.

The Attorney General does not try to distinguish *In re Kowalski*, *supra*, 21 Cal.App.3d 67 or otherwise explain why Judge Lee's ruling was not binding. Instead, she characterizes the problem as simply a "procedural error of neglecting to amend future versions of the information to reflect an earlier binding order" and argues that "[s]uch limited error is not reversible per se." She primarily relies on *People v. Letner and Tobin* (2010) 50 Cal.4th 99 (*Letner*), in which the defendants contended that the trial court erroneously denied their section 995 motions to dismiss certain charges and special-circumstance allegations after the magistrate declined to hold them to answer on those charges and allegations. (*Id.* at p. 138.) Our state Supreme Court determined that error in the denial of a section 995 motion is not " 'jurisdictional in the fundamental sense' " and therefore " 'require[s] reversal only if [a] defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error.' " (*Id.* at pp. 139-140.) The court concluded that the defendants had failed to establish prejudice because even assuming insufficient evidence of the charges and allegations was presented at the preliminary hearing, sufficient evidence was presented at trial. (*Id.* at p. 140.)

This reasoning might control if the only problem here was that the premeditation allegation was tried even though sufficient evidence of it was not first presented at the preliminary hearing. Article I, section 14 of the California Constitution provides, "Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information." And under section 1009, "[a]n indictment or accusation cannot be amended so as to change the offenses charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination." Although *Letner*, *supra*, 50 Cal.4th 99 never mentions these provisions, it suggests that a failure to present evidence at the earlier stage does not in

8

and of itself require reversal when an allegation is made in a charging document and successfully tried, even though probable cause was never established at the preliminary hearing.[8]

But the problem here was not that the section 995 motion was wrongfully *denied*, thereby allowing the premeditation allegation to proceed without sufficient evidence of it having been presented. Instead, the error lies in the reinstatement of the premeditation allegation after it had been dismissed because the section 995 motion was *granted*. Even if we could consider this error harmless in the *Letner* sense (i.e., the jury found premeditation even though probable cause for it was not established at the preliminary hearing), we nonetheless conclude it was prejudicial because it resurrected an allegation whose dismissal the prosecution never properly challenged and that never should have been tried.[9]

---

[8] Several decisions of the Courts of Appeal that did not involve section 995 motions have nonetheless relied on the requirement that evidence first be presented at a preliminary hearing to reverse convictions where probable cause was not established at the earlier stage without regard to whether sufficient evidence of those charges was later introduced at trial or whether the defendants had actual notice of the facts supporting them. (See, e.g., *People v. Peyton* (2009) 176 Cal.App.4th 642, 652-656 [new charge improperly added to information after defendant waived preliminary hearing on original charges]; *People v. Graff* (2009) 170 Cal.App.4th 345, 351, 361, 363-365 [magistrate did not hold defendant to answer for charge based on particular incident; trial court erred by allowing jury to convict based on that incident, which amounted to constructive amendment of information]; *People v. Burnett* (1999) 71 Cal.App.4th 151, 164-165, 170, 177-178 [conviction reversed because it could have been based on incident of which no evidence was presented at preliminary hearing].)

[9] We observe that *Letner*, *supra*, 50 Cal.4th 99 renders it pointless to argue on appeal that a section 995 motion was erroneously denied based on lack of probable cause: either substantial evidence will support the jury's finding, in which case the denial will be found harmless, or it will not, in which case reversal will be required anyway. Although defendants have the option to challenge the denial of a section 995 motion by a pretrial petition for a writ of prohibition, such a writ is generally only permitted when the motion is filed within 60 days of arraignment. (§§ 999a, 1510.) We see no reason to extend *Letner* to the circumstances present here and further insulate from review rulings that permit prosecutions to proceed without probable cause.

The Attorney General also argues that the error was not prejudicial because the premeditation finding did not affect the length of Saez's sentence. We cannot agree. Prejudice is not measured merely by the length of a sentence, and in any event, the dismissal of the premeditation finding here *does* affect the length of Saez's sentence. On the first point, a finding of premeditation can have significant consequences and be prejudicial regardless of the term imposed, such as in parole determinations. (See, e.g., *In re Hunter* (2012) 205 Cal.App.4th 1529, 1539-1540 [discussing denial of parole based on inmate's refusal to admit planning crime despite plea to first degree murder].) On the second point, although the premeditation finding did not affect the length of the sentence imposed by the trial court, it *does* affect the sentence that will be imposed as a result of the conclusions reached in this opinion. When the trial court sentenced Saez, he faced a sentence of at least 25 years to life for the attempted murder regardless of whether the premeditation allegation was found true because the crime constituted a third strike. (See §§ 664, subd. (a), 667, subd. (e)(2)(A)(ii), 667.5, subd. (c)(12).) But in part II.D. below, we conclude that one of the strike determinations must be reversed. With only one prior strike, Saez now faces a shorter sentence for attempted murder as a result of the reversal of the premeditation finding. (See §§ 664, subd. (a), 667, subd. (e)(1).)

Having concluded that the premeditation finding cannot be sustained, we turn to discuss the appropriate remedy. Saez acknowledges that the normal remedy would be to reverse the premeditation finding and remand for resentencing. (See, e.g., *People v. Arias* (2010) 182 Cal.App.4th 1009, 1012, 1021-1022.) He argues, however, that his later trial counsel's failure to appreciate that the premeditation allegation had been dismissed prevented him from "achiev[ing] a favorable plea bargain" because he faced a reduced sentence as a result of Judge Lee's ruling, and he might have agreed to a plea agreement if the premeditation allegation were clearly off the table. According to him, "[t]he only feasible remedy is therefore to reverse the [attempted-murder] conviction in its entirety, with instructions to re-arraign [him] on an Information that omits the allegation of premeditation" and the charge of receiving or buying stolen property. But the premeditation allegation *was* off the table as soon as the section 995 motion was

10

granted, as the parties (and their original counsel) presumably understood. Thus, at that time, Saez had and ignored the same incentive to plea bargain that he now argues would have prompted him to seek a deal. Furthermore, there is no evidence that a plea bargain was offered, in the works, or likely. Accordingly, while we reverse the premeditation finding, we decline to set aside his conviction for attempted murder.

        B.       *Sufficient Evidence Supports the Finding that the Victim Suffered Great Bodily Injury.*

Saez contends insufficient evidence was presented that the victim suffered great bodily injury. We reject this contention with little difficulty.[10]

Under section 12022.7, subdivision (a), "[a]ny person who inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Great bodily injury is defined as "a significant or substantial physical injury," but it need not be permanent or cause lasting bodily damage. (§ 12022.7, subd. (f); *People v. Escobar* (1992) 3 Cal.4th 740, 749-750.) "Proof that a victim's bodily injury is 'great'—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." (*People v. Cross* (2008) 45 Cal.4th 58, 66.) "[D]etermining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury. " (*Id.* at p. 64.)

To evaluate a claim of insufficient evidence, " 'we review the whole record to determine whether . . . [there is] substantial evidence to support the verdict . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the

---

[10] Saez also argues the trial court erred by admitting Officer Reilly's testimony that the victim was unconscious because it was improper lay opinion about a medical condition. We need not resolve this issue because substantial evidence supports the jury's finding regardless of the victim's state of consciousness.

11

prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Here, ample evidence was presented that the victim suffered great bodily injury. To begin with, there was evidence of considerable bleeding: Officer Reilly testified that the victim "had blood all over her face" and coming from her ear, Dr. Horn observed blood around her nostrils and mouth, and there was blood on the garage door near her head. And it is significant that many of the victim's injuries were to her head, an obviously vulnerable area. Dr. Horn testified that the victim had lacerations on her neck and tongue, as well as fractures to the bones near her eye socket and cheek. Finally, the victim was kept in the hospital for two days to be monitored and receive oxygen, further permitting the inference that her injuries were significant. In sum, sufficient evidence was presented to support the jury's finding that the victim's injuries were serious and substantial.

C.     *Sufficient Evidence Supports the Identity Finding.*

Saez argues insufficient evidence supports the trial court's finding that he is the person who was convicted of the Wisconsin offenses. We disagree.

The operative information alleged that Saez was convicted in 1983 in Wisconsin of armed robbery and false imprisonment while armed. Trial on the prior convictions was bifurcated. Before the jury considered whether the prior convictions were true, the trial court held a hearing to determine whether Saez was the person named in the prior-conviction records. At that hearing, Officer Reilly testified that when Saez was booked, she obtained from him a Wisconsin identification card and a California benefits card, which he acknowledged were his. Both cards listed his name as Jose A. Saez, with a birth date of February 22, 1960. The Wisconsin card identified an address of 500 East Garfield Avenue, Milwaukee, Wisconsin.

The People introduced certified copies of documents pertaining to the Wisconsin convictions. Documents from the armed robbery conviction identified a defendant named Jose Antonio Saez with a birth date of February 22, 1960, and an address of

12

425 E. Garfield, Milwaukee, Wisconsin. Documents from the false-imprisonment conviction identified a defendant named Jose Antonio Saez with a birth date of February 22, 1960, and an address of 425 E. Garfield Avenue, Milwaukee, Wisconsin.

Saez's trial counsel argued that this evidence failed to prove that Saez was the person convicted of the Wisconsin crimes because the records did not include fingerprints or photographs of the defendant. Counsel argued it was possible two different men named Jose Saez lived on the same street in Milwaukee. The trial court responded, "If it were not for the middle name, the Court might agree with you, and the date of birth, but . . . having someone who lives on Garfield, despite the address [number], with the same date of birth and the same middle name" was too much of a "coincidence." The court found that the same name, same birth date, and address on the same Milwaukee street established that Saez was the same Jose Antonio Saez who had been convicted of the Wisconsin offenses.

"[T]he question of whether the defendant is the person who has suffered [a] prior conviction shall be tried by the court without a jury," and the defendant's identity must be proven beyond a reasonable doubt. (§ 1025, subd. (c); see *People v. Monge* (1997) 16 Cal.4th 826, 833-834.) We review the record in the light most favorable to the trial court's finding to determine whether there is substantial evidence to support the conclusion that Saez was the person who suffered the Wisconsin convictions. (See *People v. Manibusan*, *supra*, 58 Cal.4th at p. 87.)

Saez argues that Jose Antonio Saez is a common name and the fact he has the same name and birth date as the person convicted in Wisconsin is insufficient evidence that he and the person convicted in Wisconsin are one and the same.[11] We are not persuaded. "[I]n the absence of countervailing evidence, . . . identity of person may be presumed, or inferred, from identity of name." (*People v. Mendoza* (1986) 183 Cal.App.3d 390, 401, italics omitted [sufficient evidence defendant was person who

---

[11] We decline Saez's invitation to search for this name on various websites to determine how common it is, as no such evidence was presented to the trial court.

suffered prior convictions where first and last names were the same, even though middle names spelled differently].) The identity of birth dates is also highly significant. (See *People v. Towers* (2007) 150 Cal.App.4th 1273, 1286.) And, although the house numbers of the addresses on East Garfield Street varied, we agree with the trial court that coincidence is not a reasonable explanation for the identical names, birth dates, and streets.

Saez also argues that either "a fingerprint []or a photograph of the Milwaukee Saez . . . was required" before the trial court could find he was the person who suffered the Wisconsin convictions. He provides no authority for this position, however, and we are aware of none. (See *People v. Sarnblad* (1972) 26 Cal.App.3d 801, 805-806 ["photographic or fingerprint evidence . . . not necessary" to prove prior conviction where defendant had "sufficiently uncommon" name].) We conclude that sufficient evidence supported the court's finding.

> D. *The Trial Court's Reliance on the Wisconsin Record of Conviction in Determining that the Conviction for False Imprisonment While Armed Was a Strike Violated the Sixth Amendment.*

Saez maintains that the trial court's determination that his conviction for false imprisonment while armed constituted a strike was improper for two reasons. He first contends the determination violated our state Supreme Court's decision in *McGee*, *supra*, 38 Cal.4th 682, which establishes limits on a sentencing court's ability to consider the record of a prior conviction in making a strike determination. He alternatively contends the determination violated his Sixth Amendment rights under principles recognized by the United States Supreme Court in its 2013 decision in *Descamps, supra,* 133 S.Ct. 2276. We disagree with his first contention but agree with his second.

> 1. Additional facts.

After the trial court determined that Saez was the person named in both sets of prior-conviction records, it so instructed the jury and directed it to consider whether the prior convictions were true. Over Saez's objection, records from both convictions were admitted. After deliberation, the jury found the prior convictions to be true.

Saez filed a *Romero* motion to strike the priors and a sentencing brief. In both documents, he assumed the prior convictions constituted strikes and did not offer any argument otherwise. The People then submitted a sentencing brief in which they argued that both of the Wisconsin convictions qualified as strikes. In particular, they argued that the false-imprisonment conviction qualified as a serious felony under section 1192.7, subdivision (c)(8), which makes "any felony in which the defendant personally uses a firearm" a serious felony.[12] "[A]nticipat[ing] that defense counsel [would] argue that the Wisconsin prior conviction[] [did] not, despite the descriptions of the facts . . . , include all of the elements" of a serious felony under section 1192.7, subdivision (c)(8), the People argued that the trial court could properly consider the " 'entire record of conviction.' "

The exhibit of records from the false-imprisonment conviction was comprised of the judgment of conviction, the judgment roll, and the criminal complaint. The judgment of conviction reflects that in 1983, after a guilty plea, the Wisconsin trial court found Saez guilty of "False Impris. While Armed" under Wisconsin Statutes sections 939.63, subdivision (1)(a)(4) and 940.30, a felony, for a crime committed on January 17, 1983. The judgment also shows that after the same plea, he was convicted of "Reckless Use of Weapon," a misdemeanor, under Wisconsin Statutes section 941.20, subdivision (1)(c), for a crime also committed on January 17, 1983.

The judgment roll, which states at the top that the relevant offenses were "false imprisonment while possessin[g] a dangerous weapon" and "reckless use of weapon," reflects that the Wisconsin trial court found the complaint stated probable cause for further proceedings. (Capitalization omitted.) A preliminary hearing was held, during which the court found "probable cause to hold [Saez] for further proceedings," and he was "given [a] copy of the information." The entry for a hearing a couple months later

---

[12] Saez challenges the sufficiency of the evidence to support the trial court's determination that the armed-robbery conviction was a strike only on the basis of the trial court's identity finding (see section II.C., above), and we therefore do not further discuss the records pertaining to that conviction.

states: "Statement by defense counsel that defendant wishes to enter a plea of guilty as to all counts. Over objection by both counsel, defendant still wishes to enter a plea of guilty. Defendant sworn and examined as to his plea, advised of his constitutional rights and of the maximum penalty. Defendant waives all his rights and pleads guilty, Court finds defendant guilty as charged in the Information as to each count." An entry for the subsequent sentencing hearing states, "All parties stipulate to the facts in the criminal complaint for basis of the plea." Neither a transcript of any of these hearings nor an information appears in the exhibit of records.

Finally, the complaint charged Saez with a count of "False Imprisonment While Poss. a Dangerous Weapon," stating, "[O]n January 17, 1983, at or about the 500 block of South 2nd Street, City of Milwaukee, [Saez] did intentionally, while possessing a dangerous weapon, to wit: a .38 caliber revolver[,] restrain [the victim] without his consent and with knowledge that he had no lawful authority to do so, contrary to Wisconsin Statutes sections 940.30 and 939.63(1)(a)(4)." The complaint also charged Saez with a count of "Reckless Use of Weapon," stating, "[O]n January [*sic*] at or about the 500 block of South 2nd Street, City of Milwaukee, [Saez] did intentionally point a firearm at [the same victim], contrary to Wisconsin Statutes section 941.20(1)(c)."

The complaint included a police officer's sworn statement, which we will refer to as the affidavit of probable cause. The officer stated he observed Saez

> "grab the [victim] . . . by the arm and pull [the victim] toward him . . . [and] then . . . remove what was subsequently observed to be a .38 caliber Smith and Wesson handgun revolver from the inner front portion of [his] pants whereupon . . . [he] point[ed] said handgun at the chin of [the victim] whom [he] was restraining by holding on to [the victim]'s arm with his hand whereupon . . . [he], while still holding on to [the victim]'s arm and pointing the above stated handgun at [the victim]'s body, pull[ed the victim down the street and] . . . into a vacant lot."

At the sentencing hearing in this case, the trial court announced its tentative decision to deny the *Romero* motion and find that Saez had "two prior strike convictions." It pointed to "[t]he callous manner in which [the attempted murder] was executed" to explain why it was "not inclined to strike the prior strikes but impose the

16

sentence required by law based on his two prior strike convictions." Saez's trial counsel argued the *Romero* motion, but he did not contend that the two prior convictions were not strikes. The court then denied the motion and imposed the sentence, including a term of 25 years to life for the attempted murder "with two prior strike convictions" and "two five-year enhancements for each of the prior . . . strike offenses." The court did not discuss on the record its basis for concluding the Wisconsin convictions were strikes.

2.  The fact of Saez's Wisconsin conviction of false imprisonment while armed does not by itself establish that the crime was a serious felony under California law.

California's Three Strikes law requires criminal sentences to be increased when a defendant has been convicted of one or more prior serious or violent felonies, or "strikes." (*People v. Vargas* (2014) 59 Cal.4th 635, 638; §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) A qualifying strike includes "[a] prior conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison . . . if the prior conviction in the other jurisdiction is for an offense that includes all of the elements of a particular . . . serious felony as defined in subdivision (c) of Section 1192.7." (§ 667, subd. (d)(2).) In turn, section 1192.7, subdivision (c) lists many offenses that constitute "serious felonies" and includes "any felony in which the defendant personally uses a firearm."[13] (§ 1192.7, subd. (c)(8).) As we will discuss,

_____

[13] The operative information in this case did not identify the particular category of serious felony into which the Wisconsin conviction for false imprisonment was alleged to have fallen. In their sentencing brief below, the People argued this prior conviction was a serious felony only because it involved personal use of a firearm, although other categories of serious felonies potentially applied. (See, e.g., § 1192.7, subd. (c)(23) ["any felony in which the defendant personally used a dangerous or deadly weapon"].) We note that if a prior crime "may qualify as a serious felony" in more than one way, "[t]he better practice" is to allege in the information the specific category or categories into which it falls, but Saez raises no claim of error in this regard (which would be waived). (*People v. Thomas* (1986) 41 Cal.3d 837, 843.) We thus confine our analysis to whether the Wisconsin crime qualified as a serious felony under section 1192.7, subdivision (c)(8).

17

whether Saez's Wisconsin conviction for false imprisonment while armed constitutes a strike cannot be determined by the simple fact of the conviction alone but instead turns on whether the conviction documents prove that he was convicted of personally using a firearm in the commission of that crime.

In California, "[f]alse imprisonment is the unlawful violation of the personal liberty of another." (§ 236.) False imprisonment is a felony—i.e., punishable by imprisonment in state prison as required by section 667, subdivision (d)(2)—only if it is " ' "effected by violence, menace, fraud, or deceit." ' " (§ 237, subd. (a); *People v. Islas* (2012) 210 Cal.App.4th 116, 122-123.) Saez's conviction for false imprisonment while armed was under two statutes, which are identical in relevant part to their 1983 versions. The first makes it a felony for someone to "intentionally confine[] or restrain[] another without the person's consent and with knowledge that he or she has no lawful authority to do so." (Wis.Stat. § 940.30.) The second permits a criminal sentence to be increased "[i]f a person commits a crime while possessing, using or threatening to use a dangerous weapon." (Wis.Stat. § 939.63, subd. (1).)

Saez recognizes that false imprisonment under Wisconsin Statutes section 940.30 includes all of the elements of false imprisonment under section 236,[14] but he argues that a conviction under Wisconsin Statutes sections 939.63, subdivision (1) and 940.30 does not necessarily establish a serious felony under section 1192.7, subdivision (c). We agree because the conviction fails to establish four necessary elements. First, it does not establish *use*. A defendant can be convicted under Wisconsin Statutes section 939.63 for merely possessing a dangerous weapon, but under California law "use" of a weapon requires more. (*People v. Bland* (1995) 10 Cal.4th 991, 996-997 ["use of a firearm connotes something more than a bare potential for use" and requires "conduct which

---

[14] The converse is not true. For example, Wisconsin law requires the specific "intention to confine or restrain another," whereas false imprisonment under section 236 is a general intent crime. (*Geitner v. State* (1973) 59 Wis.2d 128, 133; *People v. Fernandez* (1994) 26 Cal.App.4th 710, 717.)

18

produces a fear of harm or force by means or display of a firearm in aiding the commission of" a crime]; *In re Pritchett* (1994) 26 Cal.App.4th 1754, 1757 [distinguishing between "possession" and "personal[] use[]"].)  Second, the conviction does not establish *personal* use, because it is possible to be convicted of being armed under Wisconsin Statutes section 939.63 as an aider and abettor.  (See *State v. Ivy* (1984) 119 Wis.2d 591, 596-600 [discussing aider-and-abettor liability for robbery while armed].)  Third, the conviction does not establish use of a *firearm*, because Wisconsin Statutes section 939.63 encompasses all dangerous weapons.  Finally, the conviction does not establish that the false imprisonment was a *felony* under California law, that is, "effected by violence, menace, fraud, or deceit."  (§ 237, subd. (a).)

Because the simple fact of the conviction does not establish these elements, the only way to determine whether they are met is by looking to the record of the prior conviction.  The California and United States Supreme Courts have diverged on the limits of a sentencing court's ability to review the record of a prior conviction in determining whether the conviction can be used to increase a sentence under a statutory sentencing-enhancement scheme.  In *McGee*, *supra*, 38 Cal.4th 682, our state Supreme Court approved sentencing courts' ability to do so under California's Three Strikes law.  But in *Descamps, supra,* 133 S.Ct. 2276, the United States Supreme Court signaled that the Sixth Amendment imposes restrictions on such review beyond those recognized in *McGee*.  As we will now discuss, the trial court's reliance on the Wisconsin record of conviction to find the conviction was a strike comported with *McGee* but violated the Sixth Amendment under *Descamps*.

> 3. The trial court's reliance on the record of the prior conviction was proper under *McGee*.

In *McGee, supra*, 38 Cal.4th 682, our state Supreme Court discussed the principles governing a sentencing court's ability to look to the record of a prior conviction in making a strike determination.  (*Id.* at p. 706.)  It explained that the inquiry "is a limited one and must be based upon the record of the prior criminal proceeding, with a focus on the elements of the offense of which the defendant was convicted.  If the enumeration of

19

the elements of the offense does not resolve the issue, an examination of the record of the earlier criminal proceeding is required in order to ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law. [Citation.] The need for such an inquiry does not contemplate that the court will make an independent determination regarding a disputed issue of fact relating to the defendant's prior conduct [citation], but instead that the court simply will examine the record of the prior proceeding to determine whether that record is sufficient to demonstrate that the conviction is of the type that subjects the defendant to increased punishment under California law." (*Ibid.,* italics omitted.)

We agree with Saez that the missing serious-felony elements not established by the fact of his prior conviction for false imprisonment while armed cannot be met without relying on the police officer's statement in the affidavit of probable cause from the Wisconsin record. There is no evidence that Saez pleaded guilty to being armed while committing false imprisonment under anything but the possession prong of Wisconsin Statutes section 939.63. The complaint charged him with possessing a dangerous weapon, not using or threatening to use one. And although we cannot be absolutely sure of the actual count to which Saez pleaded guilty since the information is not in the record, there is no indication that the information contained a charge different from the complaint. Moreover, the top of the judgment roll notes the offense was false imprisonment while possessing a dangerous weapon. (See *People v. Miles* (2008) 43 Cal.4th 1074, 1091-1092 [appropriate to rely on judgment's description of offense even though prior conviction was " 'as charged in the First Count of the Indictment' " and indictment not in evidence].)

We recognize that Saez also pleaded guilty to the separate charge of reckless use of a dangerous weapon. The 1983 version of the statute under which he was convicted of this crime made anyone who "[i]ntentionally points a firearm at or toward another" guilty of a misdemeanor. (Wis.Stat. § 941.20, subd. (1)(c).) This conviction thus establishes use of a firearm. (See *People v. Granado* (1996) 49 Cal.App.4th 317, 322, 328 [personal use of a firearm under section 12022.5 includes pointing firearm at victim]; see also

20

*People v. Briceno* (2004) 34 Cal.4th 451, 463, fn. 10 [section 1192.7, subdivision (c)(8)'s "personal use of a firearm" language "corresponds to" that in section 12022.5].) But the conviction does not necessarily establish *personal* use of a firearm because a defendant can be convicted as an aider and abettor under Wisconsin Statutes section 941.20, subdivision (1)(c). (See *State v. Ivy, supra,* 119 Wis.2d at pp. 596-600.) And, although recklessly pointing a weapon at someone during a crime qualifies as using menace to effect the crime,[15] the conviction does not establish that Saez recklessly used the gun as part of the same event giving rise to the false-imprisonment conviction. For all we know from the simple fact of the convictions, Saez committed two different offenses on the same day.

Thus, the affidavit of probable cause is the only part of the record of conviction that demonstrates the necessary elements, and we therefore turn to consider whether the trial court could properly rely on it under *McGee*, *supra*, 38 Cal.4th 682. Saez argues that the police officer's statements in the affidavit were inadmissible hearsay and that the affidavit was not part of the " 'entire record of conviction' " because he did not admit any particular facts within the affidavit and did not adopt it as the basis for his plea until after the plea hearing. (Quoting *People v. Reed* (1996) 13 Cal.4th 217, 226.) We are not persuaded.

We first reject Saez's hearsay argument.[16] "The normal rules of hearsay generally apply to evidence admitted as part of the record of conviction to show the conduct underlying the conviction." (*People v. Woodell* (1998) 17 Cal.4th 448, 458.) But here, relying on the police officer's statements to determine the basis of the conviction did not

---

[15] See *People v. Matian* (1995) 35 Cal.App.4th 480, 485 [reviewing cases in which menace-related convictions for felony false imprisonment upheld based on "evidence the defendant used a deadly weapon to effect the false imprisonment"]; CALCRIM No. 1240 [defining menace for purposes of felony false imprisonment as "a verbal or physical threat of harm, including use of a deadly weapon," brackets omitted].

[16] While we question whether Saez properly preserved his hearsay argument, we will nevertheless consider it because the Attorney General does not argue it was forfeited, and Saez alternatively contends that the failure to object on hearsay grounds constituted ineffective assistance of counsel.

implicate hearsay concerns because the statements were not being considered for the truth of their assertions. (See *id.* at pp. 458-459 ["statements in [North Carolina appellate] opinion regarding defendant's use of . . . weapon" during prior crime admissible "for the *nonhearsay* purpose of determining the basis of the conviction," italics added].) When the trial court made its strike determination, what mattered was not whether it was true, as the police officer stated in the affidavit, that Saez removed a .38 caliber Smith and Wesson handgun from his pants and pointed it at the victim while restraining him. What mattered was whether those statements evinced the basis of the false-imprisonment conviction. While in many cases statements contained in charging documents might be useful only to show the basis of the *charge*, rather than the basis of the *conviction*, here the statements help to demonstrate the basis of the conviction because Saez explicitly *stipulated* that the criminal complaint, which included the affidavit, was the factual basis for his guilty plea. The officer's statements therefore could be used to demonstrate the basis of the conviction, regardless of whether Saez "did precisely those things" they described.[17] (*Id.* at p. 460; *Trujillo*, *supra*, 40 Cal.4th at p. 180.)

Turning to whether the affidavit was part of the record of conviction, we do not hesitate to conclude it was. Under *People v. Reed*, *supra*, 13 Cal.4th 217, "the trier of fact may look to the entire record of conviction 'but no further,' " preventing the prosecution from " 'relitigat[ing] the facts behind the record.' " (*Id.* at p. 226, italics omitted.) Saez argues that the affidavit was not part of the record of conviction because he did not admit any particular facts within it and only adopted it as the basis for his plea after the plea hearing. But this argument misreads the applicable case law, none of which

---

[17] Because we conclude that the statements were not introduced for the truth of the matter asserted, we do not decide whether they were admissible on any other basis, including as adoptive admissions. (See *People v. Trujillo* (2006) 40 Cal.4th 165, 179-180 (*Trujillo*) [defendant's statements in postconviction probation report could not be considered an adoptive admission that conviction was based on use of knife, especially since knife allegation was dismissed as part of plea deal]; *People v. Thoma* (2007) 150 Cal.App.4th 1096, 1103 [testimony at preliminary hearing about nurse's statement describing victim's injuries not admissible as adoptive admission for purpose of proving that defendant had caused great bodily injury].)

22

holds that *anything* that occurs after the conviction is immaterial in determining the conviction's basis. True enough, *Trujillo, supra,* 40 Cal.4th 165 concluded that statements made by the defendant in a postconviction probation report were not part of the record of conviction because such after-the-fact remarks shed no light on the conviction's basis. (*Id.* at p. 180; see also *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1127-1128 [holding postplea statements inadmissible to prove strike].) But unlike the probation report's statements in *Trujillo*, the statements in the affidavit here were part of the complaint and made long *before* the plea was entered, and Saez stipulated to the complaint as the basis of the conviction. Although that stipulation occurred after the conviction, we see no reason this timing undercuts reliance on the preconviction affidavit statements as "reflect[ing] the facts upon which [the defendant] was convicted." (*Trujillo*, at p. 180.) In conclusion, nothing in *McGee*, *supra*, 38 Cal.4th 682 or other state cases addressing reliance on prior-conviction records prevented the trial court from relying on the affidavit statements to conclude that Saez's Wisconsin conviction for false imprisonment while armed involved his personal use of a firearm and was therefore a strike under California law.[18]

> 4. The trial court's reliance on the Wisconsin record of conviction violated the Sixth Amendment under the principles recognized in *Descamps*.

Since we are unable to conclude that the trial court exceeded its authority to consider the record of the prior conviction under *McGee*, *supra*, 38 Cal.4th 682, we turn to whether the strike determination must be reversed because of the Sixth Amendment

---

[18] Under different circumstances, we would agree with the concurring opinion both that the police officer's statements were not part of the entire record of conviction and that the statements were inadmissible hearsay. Saez pleaded guilty to the information, which, as the concurring opinion correctly points out, superseded the complaint. Thus, the complaint did not bear on the basis of the conviction—*until Saez stipulated to it as the factual basis for his plea.* Once he did, the officer's statements became evidence of the basis of the conviction and were admissible for that nonhearsay purpose, whatever principles might have otherwise barred reliance on them.

principles announced by the United States Supreme Court in *Descamps, supra,* 133 S.Ct. 2276. We conclude that it must.

The Sixth Amendment confers a constitutional right on defendants to have a jury determine, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*).) Saez contends that this right was violated when the trial court relied on the record of the false-imprisonment conviction, specifically the police officer's statements in the affidavit of probable cause, in finding that the conviction was a strike.

We recognize that for years trial courts in California have been allowed to determine whether a prior conviction qualifies as a strike by looking to the "entire record of conviction." (*People v. Reed*, *supra*, 13 Cal.4th at p. 226; *People v. Guerrero* (1988) 44 Cal.3d. 343, 355.) But in *Descamps*, *supra*, 133 S.Ct. 2276, the United States Supreme Court pointed out the constitutional problems in doing so. We therefore turn to discuss *Descamps*, and we begin by recounting the cases leading up to it.

*Apprendi*, *supra*, 530 U.S. 466 held that the Sixth and Fourteenth Amendments require any fact,"[o]ther than the fact of a prior conviction," that increases a penalty for a state crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt.[19] (*Id.* at pp. 476, 488-490.) The exception for the fact of a prior conviction was based on *Almendarez-Torres v. United States* (1998) 523 U.S. 224 (*Almendarez-Torres*), in which the high court approved the increase of a defendant's sentence based on prior convictions where those convictions were not alleged in the indictment but "the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that [the defendant] did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the

---

[19] For the sake of simplicity, the following discussion is phrased in terms of what the Sixth Amendment requires and omits references to the Fourteenth Amendment that would otherwise be appropriate.

24

maximum of the statutory range." (*Apprendi*, at p. 488.)  Although noting that it was "arguable that *Almendarez-Torres* was incorrectly decided," the court declined to "revisit it . . . [and decided] to treat the case as a narrow exception to the general rule" it announced.  (*Apprendi*, at pp. 489-490.)

The next major decision for our purposes is *Shepard v. United States* (2005) 544 U.S. 13 (*Shepard*), which involved sentencing under the Armed Career Criminal Act (ACCA), a federal statute that, like California's Three Strikes law, allows the use of prior convictions to enhance sentences.  (18 U.S.C. § 924, subd. (e).)  At issue was whether the defendant's prior conviction of burglary in Massachusetts after a guilty plea was for a "violent felony" under the ACCA, which "makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle."  (*Shepard*, at pp. 15-16.)  The Massachusetts burglary statute under which the defendant was convicted included boats and cars (*id.* at p. 17), and the record of conviction was silent on the factual basis for the plea, "there being no plea agreement or recorded colloquy in which [the defendant] admitted the generic fact" of committing burglary in a building or enclosed space.  (*Id.* at p. 25 (plur. opn. of Souter, J.).)  The government urged that the sentencing court should be permitted to rely on "reports submitted by the police with applications for issuance of the complaints" to find that the defendant had pleaded guilty to generic burglary.  (*Id.* at p. 17.)

The United States Supreme Court rejected the government's position, holding that under the ACCA a sentencing court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  (*Shepard*, *supra*, 544 U.S. at p. 16.)  Characterizing the issue as one "of statutory interpretation," the court found no reason to upset *Taylor v. United States* (1990) 495 U.S. 575.  (*Shepard*, at p. 23.)  In *Taylor*, the high court had "held that the ACCA generally prohibits the [sentencing] court from delving into particular facts disclosed by the record of conviction, thus leaving the court normally to 'look only to the fact of conviction and the statutory definition of the prior offense,' " but it "recognized an exception to this

25

'categorical approach' only for 'a narrow range of cases where a jury [in a State with a broader definition of burglary] was actually required to find all the elements of' the generic offense" because " 'the indictment or information and jury instructions show[ed] that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict . . . .' " (*Shepard*, at p. 17, quoting *Taylor*, at p. 602.)

In Part III of *Shepard*, a four-justice plurality expressed the view that Sixth Amendment jurisprudence "provide[d] a further reason to adhere to the demanding requirement that any sentence under the ACCA rest on a showing that a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to generic burglary." (*Shepard*, *supra*, 544 U.S. at p. 24 (plur. opn. of Souter, J.).) The plurality rejected the suggestion that it would be permissible, in the case of a prior plea, to "make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of" that plea, which would "rais[e] the concern underlying [*People v.*] *Jones* [(1999) 526 U.S. 227][20] and *Apprendi*[, *supra*, 530 U.S. 466]: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almendarez-Torres*[, *supra*, 523 U.S. 224] clearly authorizes a judge to resolve the dispute." (*Shepard*, at p. 25 (plur. opn. of Souter, J.).) While the plurality did not conclusively determine that such factfinding would violate the Sixth Amendment, it stated that "[t]he rule of reading statutes to avoid serious risks of unconstitutionality"

---

[20] In *Jones v. United States*, *supra*, 526 U.S. 227, the high court held that a federal carjacking statute "defined three distinct offenses," not "a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of charge and jury verdict," in part to avoid the Sixth Amendment concerns the latter interpretation would raise. (*Id.* at pp. 229, 240, 243, fn. 6.)

supported its determination that the ACCA did not permit such a procedure. (*Id.* at pp. 25-26 (plur. opn. of Souter, J.).) Writing separately, Justice Thomas concurred in the judgment on the basis that *Apprendi* would preclude the sentencing court from any factfinding whatsoever. (*Id.* at p. 28 (conc. opn. of Thomas, J.).)

A year after *Shepard*, *supra*, 544 U.S. 13, our state Supreme Court decided *McGee*, which reiterated that "a review and interpretation of documents that are part of the record of the prior criminal proceeding" is permitted in making strike determinations. (*McGee*, *supra*, 38 Cal.4th at p. 685.) The *McGee* defendant argued that his strike determination violated the federal Constitution because a judge, not a jury, "is entrusted with the responsibility" of reviewing the prior record of conviction to make such determinations. (*McGee*, at pp. 685-686.) The *McGee* court concluded that the exception for " 'the fact of a prior conviction' " encompassed facts related to recidivism and that *Apprendi*, *supra*, 530 U.S. 466 did not preclude a court from conducting "the inquiry required (and permitted) . . . under California law." (*McGee*, at pp. 686, 706-707, italics omitted.) Although acknowledging that *Shepard* "may suggest that a majority of the high court would view the legal issue presented in the case before us as presenting a serious constitutional issue," our state Supreme Court stated that "the high court's decision did not purport to resolve that issue," which "was resolved as a matter of statutory interpretation," and did "not provide the type of clear resolution of the issue that would justify overturning the relevant California precedents." (*McGee*, at p. 708.) It further stated, "We recognize the possibility that the United States Supreme Court, in future decisions, may extend the *Apprendi* rule . . . . But because in our view there is a significant difference between the nature of the inquiry and the factfinding involved in the type of sentence enhancements at issue in *Apprendi* and its progeny as compared to the nature of the inquiry involved in examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute, we are reluctant to assume, in advance of such a decision by the high court, that the federal constitutional right to a jury trial will be interpreted to apply in the latter context." (*McGee*, at p. 709.) In other words, *McGee*

27

concluded that a trial court's examination of the record of a prior conviction fell, at least for the time being, within *Apprendi*'s prior-conviction exception. (*Ibid.*)

In mid-2013, the United States Supreme Court handed down *Descamps, supra,* 133 S.Ct. 2276, an eight-to-one decision explaining that the Sixth Amendment bars a sentencing "court's finding of a predicate offense . . . if it [goes] beyond merely identifying a prior conviction." (*Id.* at p. 2288.) As did *Shepard*, *supra*, 544 U.S. 13, *Descamps* involved a determination under the ACCA whether a prior conviction under a state burglary statute was a conviction for generic burglary, which requires an unlawful entry. (*Descamps*, at p. 2282.) The district court had found that the prior conviction was such a conviction by reviewing the transcript of the plea hearing, which showed that the defendant had not objected to the prosecutor's proffer that the crime involved an unlawful entry. (*Ibid.*) The Court of Appeals for the Ninth Circuit affirmed, holding "that when a sentencing court considers a conviction under . . . [a] statute that is 'categorically broader than the generic offense[,]' . . . [it] may scrutinize certain documents to determine the factual basis of the conviction." (*Id.* at pp. 2282-2283.)

The eight-justice majority of the United States Supreme Court concluded that this kind of factfinding was impermissible under the ACCA. It explained the procedure required by that statute as follows. First, a sentencing court must determine whether the statute under which a defendant was previously convicted is " 'divisible,' " that is, one that "sets out one or more elements of the offense in the alternative," or " 'indivisible,' " that is, "one not containing alternative elements." (*Descamps*, *supra*, 133 S.Ct. at p. 2281.) If the statute is indivisible, the " 'categorical approach' " limits the inquiry to a comparison of the elements of the original statute and the generic crime, and "only if the statute's elements are the same as, or narrower than, those of the generic offense" can an enhancement be imposed under the ACCA. (*Ibid.*) If, however, a statute is divisible, the " 'modified categorical approach' . . . permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction

28

(including the alternative element used in the case) with the elements of the generic crime." (*Ibid.*) The high court explained that the modified categorical approach "merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." (*Id*. at p. 2285.) Because the California burglary statute under which the *Descamps* defendant had been convicted was indivisible, the sentencing court's determination, based on the plea transcript, that the previous conviction involved unlawful entry contravened the ACCA. (*Id.* at pp. 2285-2286.)

*Descamps* explained that one reason "for establishing [its] elements-centric, 'formal categorical approach' " was to avoid the "Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries." (*Descamps*, *supra*, 133 S.Ct. at p. 2287.) In doing so, it discussed the "Sixth Amendment underpinnings" of its insistence that sentencing courts focus on the elements, not the underlying facts, of prior convictions. We quote this discussion at length because of its critical importance in resolving the issue before us:

> "We have held that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' [Citation.] Under [the] ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty. Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. Those concerns, we recognized in *Shepard*, [*supra*, 544 U.S. 13] counsel against allowing a sentencing court to 'make a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea,' or what the jury in a prior trial must have accepted as the theory of the crime. [Citations.] Hence our insistence on the categorical approach.

> [But] the Ninth Circuit's ruling flouts our reasoning—here, by extending judicial factfinding beyond the recognition of a prior conviction. Our modified categorical approach merely assists the sentencing court in identifying the defendant's crime of conviction, as we have held the Sixth Amendment permits. But the Ninth Circuit's reworking authorizes the court to try to discern what a trial showed, or a plea proceeding revealed,

29

about the defendant's underlying conduct. [Citation.] And there's the constitutional rub. The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances. [Citation.] Similarly, as *Shepard* indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment. [Citation.] So when the District Court here enhanced Descamps'[s] sentence, based on his supposed acquiescence to a prosecutorial statement (that he 'broke and entered') irrelevant to the crime charged, the court did just what we have said it cannot: rely on its own finding about a non-elemental fact to increase a defendant's maximum sentence."

(*Descamps*, at pp. 2288-2289.)

Our state Supreme Court has yet to consider how the Sixth Amendment principles discussed in *Descamps*, *supra*, 133 S.Ct. 2276 affect its decision in *McGee*, *supra*, 38 Cal.4th 682 not to extend *Apprendi*, *supra*, 530 U.S. 466 to "the inquiry involved in examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute." (*McGee*, at p. 709.) Few decisions from the Courts of Appeal have analyzed *Descamps* either. The most extensive consideration appears in *People v. Wilson* (2013) 219 Cal.App.4th 500 (*Wilson*). In *Wilson*, the defendant had previously pleaded no contest to proximately causing bodily injury while driving while intoxicated and to gross vehicular manslaughter while intoxicated. (*Id.* at p. 506.) Relying on a preliminary-hearing transcript, which revealed a factual dispute about whether Wilson or his girlfriend had been steering at the time of the crash killing another passenger, the trial court concluded that the prior conviction for gross vehicular manslaughter had involved "personal infliction of great bodily injury" and was therefore a serious felony. (*Id.* at pp. 505-509; § 1192.8, subd. (a).)

Our colleagues in the Sixth District concluded that the trial court's strike finding "violated both state and federal law." (*Wilson*, *supra*, 219 Cal.App.4th at p. 509.) The

*Wilson* court first found that the strike finding violated California law by pointing to *McGee*'s statement that reviewing a record of a prior conviction to determine " 'the nature or basis' of the prior offense . . . 'does not contemplate that the court will make an independent determination regarding a *disputed issue of fact relating to the defendant's prior conduct*.' " (*Wilson*, at p. 510, italics in original, quoting *McGee*, *supra*, 38 Cal.4th at pp. 691, 706.)  It observed that in *McGee*, the defendant "admitted to specific conduct satisfying the elements of robbery under California law," permitting the trial court there to determine that the "prior convictions 'realistically [could not] have been based on conduct that would not constitute a serious felony under California law.' " (*Wilson*, at p. 511.)  In contrast, the defendant in *Wilson* had "admitted [only] the element of proximately causing [the other passenger]'s death" by pleading to the vehicular manslaughter count, and the prior record showed that he disputed whether there had been personal infliction.  (*Id.* at pp. 511-512, italics omitted.)  The Court of Appeal concluded that "the prior conviction 'realistically [could] have been based on conduct that would not constitute a serious felony' " and "[t]he sentencing court could only resolve the relevant factual dispute by weighing the evidence and discrediting [the] defendant's statements." (*Id.* at p. 512.)  As a result, the trial court's strike determination was impermissible under *McGee*.  (*Wilson*, at pp. 512-513.)

*Wilson* then held that the trial court's determination also violated the Sixth Amendment.  (*Wilson*, *supra*, 219 Cal.App.4th at p. 515.)  Interpreting *Descamps*, *supra*, 133 S.Ct. 2276 to include a holding by "a majority of the United States Supreme Court . . . that a sentencing court's finding of priors based on the record of conviction implicates the Sixth Amendment under *Apprendi*[, *supra*, 530 U.S. 466]," *Wilson* concluded that the trial court was "precluded . . . from finding the facts—here in dispute—required to prove a strike prior based on the gross vehicular manslaughter offense." (*Wilson*, at p. 515.)  As had the trial court in *Descamps*, the trial court in *Wilson* had "looked beyond the facts necessarily implied by the elements of the prior conviction." (*Wilson*, at p. 515.)  The Court of Appeal found it significant not only that there were no "admissions—factual or otherwise—made by Wilson on the record of the

31

prior conviction" but also that "Wilson explicitly contested the key fact at issue[, and] . . . the sentencing court was necessarily required to weigh the credibility of various witnesses and statements. The . . . court could not have increased Wilson's sentence without ' "mak[ing] a disputed" determination' of fact—a task the United States Supreme Court specifically counseled against." (*Id.* at pp. 515-516, quoting *Descamps*, at p. 2288.)

In holding that the strike determination violated the Sixth Amendment, *Wilson* made clear, however, that it was "not consider[ing] . . . whether the broader application of *Apprendi*[, *supra*, 530 U.S. 466] and *Descamps*[, *supra*, 133 S.Ct. 2276] to California's sentence enhancement scheme would leave intact the kinds of findings—e.g., those not concerning the facts of a defendant's prior conduct—heretofore endorsed under California law." (*Wilson*, *supra*, 219 Cal.App.4th at p. 516.) *Wilson* held "only that federal law prohibits what *McGee*[, *supra*, 38 Cal.4th 682] already proscribed: A court may not impose a sentence above the statutory maximum based on disputed facts about prior conduct not admitted by the defendant or implied by the elements of the offense." (*Wilson*, at p. 516.)

This case raises the issue that *Wilson*, *supra*, 219 Cal.App.4th 500 left for another day: whether a strike determination that does not run afoul of *McGee*, *supra*, 38 Cal.4th 682 may nevertheless violate the Sixth Amendment. *Descamps, supra*, 133 S.Ct. 2276 makes clear that it can. (See *People v. Manning* (2014) 226 Cal.App.4th 1133, 1141 & fn. 3 [approach allowing consideration of conduct underlying prior conviction to make strike determinations "may no longer be tenable" after *Descamps*].) *Descamps* declared that the Sixth Amendment prohibits "a sentencing court [from] 'mak[ing] a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea.' " (*Descamps*, at p. 2288.) This prohibition arises because "[a] guilty plea 'admits every element of the crime charged,' " but no more. (*People v. Wallace* (2004) 33 Cal.4th 738, 749; *People v. Hoffard* (1995) 10 Cal.4th 1170, 1177; see also *Trujillo*, *supra*, 40 Cal.4th at p. 176 [explaining that California case law originally limited proof of a strike to " 'matters necessarily established by the prior conviction' "].)

32

Here, Saez admitted to the elements of false imprisonment while armed and of reckless use of a dangerous weapon by pleading guilty to those crimes. But he did not admit, or waive his Sixth Amendment rights regarding, the additional facts on which the strike finding was contingent: that he *personally* used a firearm and that the reckless use of a firearm occurred in the course of the false imprisonment. Nor did his stipulation to the complaint as the factual basis of his plea constitute a waiver of Sixth Amendment rights or an admission as to those additional facts. Under Wisconsin law, both now and at the time of Saez's plea, a sentencing court accepting a guilty plea must "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged." (Wis.Stat. § 971.08, subd. (1)(b).) The Wisconsin Supreme Court has explained that "[t]he purpose of [this] inquiry is to insure the accuracy of the plea by determining whether the facts, *if proved,* constitute the offense charged and whether the defendant's conduct does not amount to a defense." (*Edwards v. State* (1971) 51 Wis.2d 231, 236, italics added.) This standard does not require that the evidence establishing the plea's factual basis "be admissible at trial or that it be sufficient to convict beyond a reasonable doubt." (*Ibid.*) Nor is a defendant required to admit to the truth of the facts supporting the plea. (See, e.g., *State v. Garcia* (1995) 192 Wis.2d 845, 856-858 [discussing pleas under *North Carolina v. Alford* (1970) 400 U.S. 25, which permits acceptance of no contest pleas even if defendants maintain their innocence].) The prior-conviction records here do not include the transcript of the prior sentencing hearing or any other information about the stipulation except the bare statement in the judgment roll that "[a]ll parties stipulate[d] to the facts in the criminal complaint for basis of the plea." There is no evidence that the prosecutor recited the factual basis for the plea or that Saez specifically admitted to any of the facts in the complaint beyond the elements of the crimes. Accordingly, we cannot conclusively say that Saez admitted to personally using a firearm or to pointing a firearm at the victim to effect the false imprisonment.[21] (See *People v. French* (2008) 43 Cal.4th

---

[21] We need not and do not decide whether a trial court could violate the Sixth Amendment by relying on a defendant's prior admission of a non-elemental fact in making a strike determination. Suffice it to say, Saez's stipulation here to the complaint

36, 51 [defense counsel's stipulation to factual basis of plea did not amount to stipulation that facts were true]; *People v. Roberts*, *supra*, 195 Cal.App.4th at pp. 1121-1122 [defendant did not admit to "prosecutor's recital of the factual basis" underlying his *Alford* plea by not objecting to that recital]; cf. *People v. Sample* (2011) 200 Cal.App.4th 1253, 1260, 1262, 1264-1265 [defendant's failure to object to prosecutor's recital of factual basis constituted admission]; *People v. Sohal* (1997) 53 Cal.App.4th 911, 914-916 [sufficient admission where defense counsel agreed prosecution capable of producing evidence proving factual basis recited].)

We recognize that the Sixth Amendment discussion in *Descamps*, *supra*, 133 S.Ct. 2276 was not an unequivocal holding, and we are accordingly hesitant to conclude—without first hearing from our state Supreme Court—that *Descamps* has "undermine[d]" *McGee*, *supra*, 38 Cal.4th 682. (*People v. Flores* (2007) 147 Cal.App.4th 199, 211; see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) But we are bound by rulings of the United States Supreme Court on matters of federal law. (*People v. Bradley* (1969) 1 Cal.3d 80, 86; *People v. Superior Court* (*Williams*) (1992) 8 Cal.App.4th 688, 702-703.) And while *Descamps* did not explicitly overrule *McGee*, *Descamps*'s discussion of the Sixth Amendment principles applicable when prior convictions are used to increase criminal sentences is clear and unavoidable and was adopted by eight of the nine justices on the high court. Under these unusual circumstances, we are compelled to apply those constitutional principles here.

We also understand the difficulty facing trial courts tasked with making strike determinations under evolving legal standards, particularly when these determinations concern prior convictions from other jurisdictions. But this much is clear: when the elements of a prior conviction do not necessarily establish that it is a serious or violent felony under California law (and, thus, a strike), the court may not under the Sixth Amendment " 'make a disputed' determination 'about what the defendant and state judge

as the factual basis for his plea was not tantamount to a finding that the facts in the affidavit of probable cause were true beyond a reasonable doubt or to an admission that those facts were true.

34

must have understood as the factual basis of the prior plea,' or what the jury in a prior trial must have accepted as the theory of the crime." (*Descamps*, *supra*, 133 S.Ct. at p. 2288.) Thus, we conclude that the trial court acted in contravention of the Sixth Amendment by necessarily relying on the police officer's statements in the Wisconsin record of conviction to increase Saez's sentence.[22]

>    E.    *The Identity Finding Did Not Violate the Sixth Amendment.*

Finally, Saez argues that the Sixth Amendment prohibited the trial court from finding he was the person named in both sets of prior-conviction records, an issue we need reach only as to the robbery conviction since we reverse the false-imprisonment strike determination for a different reason. We conclude that this finding did not violate the Sixth Amendment.

Under section 1025, a defendant is entitled to have a jury determine "whether or not the defendant has suffered the prior conviction," except that "the question of whether the defendant is the person who has suffered the prior conviction shall be tried by the court without a jury." (§ 1025, subds. (b), (c).) In *People v. Epps* (2001) 25 Cal.4th 19, our state Supreme Court explained that "[t]he right, if any, to a jury trial of prior conviction allegations derives from sections 1025 and 1158, not from the state or federal Constitution." (*Epps*, at p. 23, citing *Apprendi*, *supra*, 530 U.S. at p. 490 [discussing the exception under *Almendarez-Torres*, *supra*, 523 U.S. 224].) *Epps* explained that section

---

[22] In concluding that the Sixth Amendment was violated here, we do not accept Saez's suggestion that the specific approach described in *Descamps*, *supra*, 133 S.Ct. 2276 for establishing prior convictions under the ACCA is necessarily required in determining strikes under California's Three Strikes law. The divisible/indivisible approach discussed in *Descamps* springs in large part from the ACCA's focus on the *elements* of the prior conviction: unlike the Three Strikes law, the ACCA prohibits consideration of the conduct underlying the conviction. (See generally *Descamps*, at pp. 2283-2288.) We can conceive of situations in which an examination of the record could establish that elements of a strike were found true beyond a reasonable doubt in the prior proceeding even though the underlying statute was "indivisible" in the *Descamps* sense. For example, if Saez's conviction for reckless use of a firearm had followed a jury trial and the record of conviction showed that no aiding-and-abetting instructions were given, we think it unlikely that a determination that the prior conviction involved *personal* use of a firearm would violate the Sixth Amendment even under *Descamps*'s rationale.

1025, subdivision (c) "creates a specific exception for the question of identity" from the broader issue whether a defendant " 'has suffered the prior conviction,' " which a defendant otherwise has a right—but only a California statutory right—to have a jury determine. (*Epps*, at p. 25.)

Although *Epps* did not rule on the specific issue raised here, it clearly assumes the identity issue is included in the exception under *Almendarez-Torres*, *supra*, 523 U.S. 224. (*People v. Epps*, *supra*, 25 Cal.4th at pp. 23, 25; see also *People v. Towne* (2008) 44 Cal.4th 63, 81-82 [suggesting, in rejecting claim under *Apprendi*, *supra*, 530 U.S. 466, that "simple fact of a prior conviction" includes "whether the defendant is the person who was convicted"].) And relying on *Epps*, two Courts of Appeal have rejected the same claim that there is a federal constitutional right under *Apprendi* to a jury trial on the issue of identity. (*People v. Garcia* (2003) 107 Cal.App.4th 1159, 1164-1165; *People v. Belmares* (2003) 106 Cal.App.4th 19, 27-28.)

Saez acknowledges that under existing law, the trial "court had no choice but to . . . determine whether [he] was the person named in the prior convictions," but he appears to argue that *Descamps*, *supra*, 133 S.Ct. 2276 undermined the above precedent and established that a jury must determine the issue of identity. As discussed above, *Descamps* indicates the unconstitutionality of the determination that Saez's false-imprisonment conviction was a strike because it required a factual finding about what the basis of his plea was understood to be. But we do not perceive, and Saez does not explain, how *Descamps* can be read to undo the exception under *Almendarez-Torres*, *supra*, 523 U.S. 224, which our state Supreme Court has interpreted to encompass the issue of identity. We therefore conclude that Saez had no federal constitutional right to have the jury decide the identity issue.

### III.
### DISPOSITION

The finding that the attempted murder was willful, deliberate, and premeditated is reversed, as is the trial court's determination that the Wisconsin conviction for false

imprisonment while armed constitutes a strike, and the matter is remanded for resentencing. The judgment is otherwise affirmed.


 

_____

Humes, P.J.


I concur:


_____

Dondero, J.

Banke, J.

I concur in the judgment. I agree the United States Supreme Court in *Descamps v. United States* __ U.S. __ [186 L.Ed.2d 438, 133 S.Ct. 2276] (*Descamps*) enunciated Sixth Amendment principles compelling the conclusion California's approach to determining whether a prior conviction constitutes a "strike," as reviewed and upheld in *People v. McGee* (2006) 38 Cal.4th 682 [42 Cal.Rptr.3d 899, 133 P.3d 1054] (*McGee*), does not survive federal constitutional scrutiny.[1] I doubt, however, the record of conviction in connection with defendant's plea to false imprisonment while armed is sufficient even under *McGee* and therefore conclude the reversal of the strike determination as to that conviction can be grounded on state law grounds, as well.

In *People v. Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150],[2] our Supreme Court held a sentencing court can look at the entire record of conviction to determine whether a prior conviction can be used for enhancement purposes. The court declined, however, "to resolve such questions as what items in the record of conviction are admissible and for what purpose." (*People v. Guerrero*, 356, fn. 1.)

The high court took up this task in *People v. Reed* (1996) 13 Cal.4th 217 [52 Cal.Rptr.2d 106, 914 P.2d 184] (*Reed*), considering whether preliminary hearing transcripts and a probation report excerpt were part of the record of the prior conviction. It held the preliminary hearing transcripts were part of the record, but the testimony was subject to objection on hearsay grounds unless sufficient exceptions applied. The court concluded they did. (*Id.* at pp. 223-230.) The court did not decide whether the probation report excerpts were part of the record, because even if they were, the statements in question were double hearsay as to which insufficient exceptions applied. (*Id.* at p. 230; see also *People v. Thoma* (2007) 150 Cal.App.4th 1096, 1103 (*Thoma*) [police officer's

---

[1] Indeed, in *Descamps* the Supreme Court rejected, in part on Sixth Amendment grounds, an approach to analyzing prior convictions strikingly similar to the approach reaffirmed in *McGee*. (Compare *Descamps, supra,* 133 S.Ct. at pp. 2282-2283 & *McGee, supra*, 38 Cal.4th at pp. 706-707.)

[2] Disapproved on another ground in *People v. Miles* (2008) 43 Cal.4th 1074, 1094, footnote 14 [77 Cal.Rptr.3d 270, 183 P.3d 1236].

1

preliminary hearing testimony as to nurse's description of victim's injuries inadmissible hearsay].)

Our Supreme Court next addressed the scope of the record of conviction in *People v. Woodell* (1998) 17 Cal.4th 448 [71 Cal.Rptr.2d 241, 950 P.2d 85] (*Woodell*), considering whether an appellate opinion was part of the record. Among other issues, the court was required to address *Reed*'s conclusion that absent an exception, a sentencing court may not consider hearsay in the record. (*Woodell*, at pp. 457-461.)

The court began by reaffirming "[t]he normal rules of hearsay generally apply to evidence admitted as part of the record of conviction to show the conduct underlying the conviction," citing *Reed*. (*Woodell, supra,* 17 Cal.4th at p. 458.) However, judicial pronouncements, said the court, may be considered for a limited nonhearsay purpose. "[B]ecause the ultimate question is, of what crime was the defendant *convicted,* another way to decide this question is to look to a court ruling, including an appellate opinion, for the nonhearsay purpose of determining the basis of the conviction." (*Id.* at p. 459.) *Reed* was different, explained the court, because "the probation officer's report did not necessarily speak for the court, so hearsay statements within that report had to meet an exception to the hearsay rule to be admissible. By contrast, an appellate opinion is a judicial statement and can help determine the nature of the crime of which the defendant had been convicted." (*Ibid.*)

The court cautioned, however, that the hearsay rule may apply even to an appellate opinion, and the trial court must "carefully consider whether the opinion as a whole, including any factual statements, is probative on whether the conviction was based on a qualifying theory." (*Woodell, supra*, 17 Cal.4th at p. 460.) "For example, if the opinion refers to facts in a fashion indicating the evidence was disputed and the factual issue unresolved, that reference would have little, if any tendency, to show the basis of the conviction." (*Ibid.*) If, however, the opinion refers to "facts as established" or to specific findings by the trier of fact, these statements "would be highly probative on the nature of the conviction." (*Ibid.*) In short, even an appellate opinion cannot be admitted "to show exactly what the defendant did while committing the previous crime" without violating

2

the hearsay rule, and is admissible only for the limited purpose of determining "whether the defendant was *convicted*" of a qualifying crime. (*Ibid.,* italics added.)

In *People v. Trujillo* (2006) 40 Cal.4th 165 [51 Cal.Rptr.3d 718, 146 P.3d 1259] (*Trujillo*), the court directly addressed the issue it had deferred in *Reed*, whether an excerpt from a probation officer's report was part of the record of conviction. The court concluded the postconviction report, which included admissions by the defendant that he had stabbed the victim, was not part of the record. "A statement by the defendant recounted in a postconviction probation officer's report does not necessarily reflect the nature of the crime of which the defendant was convicted. . . . Once the court accepted his plea, defendant could admit to the probation officer having stabbed the victim without fear of prosecution, because he was clothed with the protection of the double jeopardy clause from successive prosecution for the same offense. [Citation.] Defendant's admission recounted in the probation officer's report, therefore, does not describe the nature of the crime of which he was convicted and cannot be used to prove that the prior conviction was a serious felony." (*Trujillo*, at p. 179.) The court distinguished such reports from preliminary hearing transcripts (*Reed*) and appellate court opinions (*Woodell*), which may be considered, although the court once again warned appellate opinions may not be probative and must be examined on a case-by-case basis. (*Trujillo*, at pp. 180-181; see also *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1124-1127 [125 Cal.Rptr.3d 810] (*Roberts*) [the defendant's statements during sentencing which immediately followed plea, not part of record of conviction]; *Thoma, supra,* 150 Cal.App.4th at p. 1101 [where the defendant was not asked during plea to admit victim's injuries, defense counsel's mere acknowledgment of receipt of presentencing probation report recounting victim's statement did not constitute adoptive admission by the defendant so as to avoid hearsay rule].)

The majority opinion concludes *Woodell* renders the police officer's probable cause statement imbedded in the Wisconsin criminal complaint admissible for the nonhearsay purpose of determining the basis of defendant's false imprisonment while

3

armed conviction. In my view, however, the record provided for this 1983 conviction by plea is insufficient under *Reed* and *Trujillo*.

As the majority recounts, the record provided for this conviction consists solely of a criminal pleading designated a "complaint" and the clerk's minutes of the hearings in the case.

The clerk's minutes, alone, raise serious concerns about this record. The minutes of the hearing *at which defendant pleaded guilty* say nothing about the basis for the plea. Rather, the minutes up to and including the day he entered a guilty plea reflect that two months after defendant was bound over for trial following a preliminary hearing, and on what appears to be the continued date for trial, defendant announced he wished to enter a guilty plea over the objection of counsel. Defendant was then "sworn and examined as to his plea, advised of his constitutional rights and of the maximum penalty." He thereafter waived all his rights and pleaded guilty, and was thereupon found guilty by the court "as charged in the Information as to each count."

It is only the minutes of the *next* hearing, when the case was called for sentencing, that there is any reference at all to a factual basis for "the plea." In this regard, the clerk's minutes of the sentencing hearing state in pertinent part: "Assistant District Attorney William Molitor present in Court for the State. [A]nd advised Court he is filing with the Court Certified copies with reference to the Habitual Criminality charge. Court accepts certified record, made part of the record, and orders the Habitual Criminality charge incorporated with all other charges. All parties stipulate to the facts in the criminal complaint for basis of the plea. Statement by Assistant District Attorney Wm. Molitor as to sentencing."

While it is likely the stipulation recited in the minutes of the sentencing hearing pertained to the guilty plea taken at the prior hearing, it is not entirely clear. Possibly, it pertained to a plea reflected in the certified record proffered for sentencing purposes. (See *Descamps, supra,* 133 S.Ct. at p. 2289 [the meaning of "often aged" documents submitted to show nature of prior conviction will "often be uncertain"].)

4

Further, the clerk's minutes of the prior hearing, when defendant was convicted, reflect he pleaded and was found "guilty as charged *in the Information*" (italics added). Yet, the minutes of the subsequent sentencing hearing state the parties stipulated to the "facts in the criminal *complaint* for the basis of the plea" (italics added).

Under Wisconsin law, "[t]he criminal complaint is statutorily defined as a 'written statement of the essential facts constituting the offense charged.' It functions as a pleading, which acts to confer both subject matter and personal jurisdiction upon the court." (9 Wis. Prac., Criminal Practice & Procedure (2d ed. 2015) § 1:11, fn. omitted.) As in California, "[t]he complaint is the initial charging document in a felony case and precedes the information." (9 Wis. Prac., Criminal Practice & Procedure, *supra*, § 13:2, fn. 1.) "The information is the final charging document of a felony proceeding. It is drafted by the district attorney after the preliminary examination or after the defendant's waiver of the preliminary examination." (*Id.* § 13:2; see also Wis. Stat. Ann. § 971.01(1).) Thus, filing an information is an important, separate, statutorily-required step in the Wisconsin criminal process. (*State v. Woehrer* (1978) 83 Wis.2d 696, 699 [266 N.W.2d 366]; *State v. May* (Wis. Ct. App. 1980) 100 Wis.2d 9, 11 [301 N.W.2d 458].) The information need only contain a basic recitation of the statutes violated; it need not contain or repeat the factual specificity of the complaint. (9 Wis. Prac., Criminal Practice & Procedure, *supra*, § 13:3.) Wisconsin courts also recognize that a later-filed information *supersedes* previous complaints or informations in terms of setting the scope of a criminal prosecution. (See *State v. Badzinski* (2014) 352 Wis.2d 329, 334 [843 N.W.2d 29].)

Here, the clerk's minutes show defendant was initially arraigned on the "complaint" and the court found, at that time, "probable cause to hold defendant for further proceedings." A preliminary hearing was held a week later, following which the court found probable cause to continue holding defendant and bind him over for trial. Defendant was also, at this time, arraigned on the "Information" and entered a not guilty plea. Thus, it appears defendant, indeed, pleaded guilty "as charged" in the *Information*, which, under Wisconsin law, superseded the complaint.

5

It therefore appears the United States Supreme Court's statement in *Descamps* is apt—that "when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts [i.e., facts alleged in the superseded Wisconsin complaint but likely not repeated in the information] cannot license a later sentencing court to impose extra punishment." (*Decamps, supra,* 133 S.Ct. at p. 2288) The federal circuit courts, in turn, have uniformly concluded underlying criminal pleadings that have been superseded or amended cannot be used to determine the character of the charge to which the defendant actually pleaded. (*United States v. Martinez* (8th Cir. 2014) 756 F.3d 1092, 1096-1098 [discussing circuit court cases and holding sentencing court erred in considering allegations in superseded indictment to which the defendant did not plead guilty]; see also *United States v. Castleman* (2014) __ U.S. __ [188 L.Ed.2d 426, 134 S.Ct. 1405, 1414] [when modified categorical approach is permissible, sentencing court may "consult[] the indictment to which [the defendant] pleaded guilty in order to determine whether his conviction did entail the elements necessary" to qualify as an enhancing prior].) Thus, one could fairly conclude the initial complaint is not properly part of the record of the prior Wisconsin conviction at all. (*Cf. McGee, supra,* 38 Cal.4th at p. 687 [characterizing amended Nevada information as "[t]he relevant charging document].)

In any case, the supposedly pivotal stipulation to the facts in the criminal complaint was a *post*conviction statement by defense counsel. As such, it appears highly problematic under *Trujillo*. (See *Roberts, supra,* 195 Cal.App.4th at pp. 1124-1127 [the defendant's statements during sentencing which immediately followed plea, not part of record of conviction].) By the time counsel made this stipulation, defendant "was clothed with the protection of the double jeopardy clause from successive prosecution for the same offense" and could stipulate to anything without compunction. (*Trujillo, supra,* 40 Cal.4th at p. 179.)

The record of conviction further suffers from the fact the officer's probable cause statement embedded in the complaint—supplying the alleged factual basis of the plea—is hearsay. I do not agree the holding of *Woodell* applies to allow resort to this statement

6

for the limited nonhearsay purpose of determining the basis of the conviction.  Rather, I think this case is governed by *Reed.*

In my view, untested allegations of a probable cause statement imbedded in an initial criminal complaint are much more like preliminary hearing testimony (discussed in *Reed*) than a court ruling or appellate opinion setting forth established facts or undisputed factual findings (discussed in *Woodell*).  Indeed, I do not see how the Supreme Court's discussion in *Woodell*, explaining and justifying the limited nonhearsay purpose for which a court ruling or appellate opinion can be admitted, pertains to an officer's probable cause statement in an initial charging document.  Moreover, I see little distinction between an officer's stand alone probable cause statement submitted to a prosecutor—which appears not to be part of the record of conviction under California law (see *McGee, supra,* 38 Cal.4th at pp. 694 [inquiry as to basis of prior conviction is " 'limited to examining court documents' "], 707-708 [distinguishing *Shepard v. United States* (2005) 544 U.S. 13 [161 L.Ed.2d 205, 125 S.Ct. 1254] and noting it involved police reports and complaint applications, documents "arguably distinguishable" from sworn preliminary hearing testimony and plea colloquies])—and a probable cause statement imbedded in an initial charging document that is superseded by an information filed after a preliminary hearing.  Given the indication that our high court does not view probable cause statements as commensurate even with preliminary hearing testimony governed by *Reed*, it seems highly unlikely the court would find such unsworn statements as being in the same universe as court rulings and appellate opinions governed by *Woodell*.

While the majority imply *Woodell* can be broadly applied to any item in a record of conviction, I do not think that is the case.  The court expressly approved *Reed's* hearsay analysis; indeed, it said "[t]he normal rules of hearsay generally apply to evidence admitted as part of the record of conviction." (*Woodell, supra,* 17 Cal.4th at p. 458.)  Further, the court's explanation and justification for the limited nonhearsay purpose it endorsed focused on the special character of judicial rulings and the confidence that can be reposed in them to accurately recite "established" or "undisputed"

7

facts. (*Id.* at pp. 459-460*.*) The same cannot be said of an officer's summary probable cause statement, just as it cannot be said of an officer's, or any other witness's, testimony at a preliminary hearing. (See *Reed, supra,* 13 Cal.4th at p. 224 [rejecting argument preliminary hearing testimony could be considered for nonhearsay purpose of showing basis of conviction].)

To the extent the probable cause statement in the complaint recounted the police officer's own observations, the hearsay problems might be resolved by the official record exception. However, the prosecution made no showing in that regard. (See *Woodell*, *supra*, 17 Cal.4th at p. 464 [proponent of hearsay evidence related to a prior conviction "bears the burden of showing the applicability of at least one" exception to hearsay rule].)

Thus, in my view, the record of conviction proffered in connection with defendant's conviction for false imprisonment while armed is insufficient even under California law. First, the pivotal stipulation that the facts alleged in the complaint formed the basis for the plea—even assuming it pertained to the guilty plea in question and assuming the superseded complaint was part of the record of conviction—occurred *after* defendant was convicted and therefore is not part of the record under *Trujillo.* Second, the probable cause statement embedded in the Wisconsin complaint—providing the facts referenced in the stipulation—is, under *Reed*, inadmissible hearsay for which an exception was not established.

_____

Banke, J.

A138786, *People v. Saez*

8

Trial Court: San Francisco County Superior Court

Trial Judge: Honorable Anne-Christine Massullo

Counsel for Appellant: Ozro William Childs, under appointment by the First District Appellate Project

Counsel for Respondent: Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, Hanna Chung, Deputy Attorney General