Filed 5/6/22  P. v. Irvin CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>LARRY WILLIAM IRVIN,<br><br>     Defendant and Appellant. | F078625<br><br>(Kern Super. Ct. No. LF012027A)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

It is hereby ordered that the opinion filed herein on May 4, 2022, be modified as follows:

1.  On page 2, the first sentence under the heading "INTRODUCTION" is deleted and replaced with the following:

Appellant and defendant Larry William Irvin was convicted by a jury of multiple counts of domestic violence, assault, violation of restraining order, and assault with a deadly weapon.

Except for the modification set forth, the opinion previously filed remains unchanged.  This modification does not effect a change in the judgment.

POOCHIGIAN, Acting P. J.

WE CONCUR:

SMITH, J.

SNAUFFER, J.

Filed 5/4/22 P. v. Irvin CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LARRY WILLIAM IRVIN,<br><br>    Defendant and Appellant. | F078625<br><br>(Kern Super. Ct. No. LF012027A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Judith K. Dulcich, Judge.

Kevin J. Lindsley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant and defendant Larry William Irvin was convicted by a jury of multiple counts of attempted murder, domestic violence, assault, violation of a restraining order, and assault with a deadly weapon. Defendant waived his right to a jury trial on allegations of three prison priors and a prior domestic violence conviction within the last seven years. The trial court found the prior prison allegations to not be true and found the prior domestic violence conviction to be true. Defendant was ordered to pay restitution in fines and fees at the statutory minimum.

On appeal, defendant contends there was insufficient evidence to support the trial court's ruling that he had sustained a prior domestic violence conviction under section Penal Code section 273.5, subdivision (f)(1).[1] Defendant also argues that the trial court violated his constitutional rights when it imposed the fines and fees without holding a hearing to determine whether he had the ability to pay the fines and fees citing to the case of *People v. Duenas* (2019) 30 Cal.App.5th 1157, 1160.

In supplemental briefing, defendant claims the matter should be remanded for resentencing in light of newly enacted Assembly Bill No. 518 (2021–2022 Reg. Sess.) and Senate Bill No. 567 (2021–2022 Reg. Sess.). Because we agree that defendant must be resentenced in light of the new legislation, defendant's *Duenas* claim is rendered moot. Therefore, we remand for full resentencing and otherwise affirm the judgment.

## FACTS

On October 31, 2018, after a jury trial, defendant was convicted of count 2, corporal injury resulting in a traumatic condition upon the confidential victim (C.V.) (§ 273.5, subd. (a)), a felony; count 3, assault on C.V. by means likely to produce great bodily injury (§ 245, subd. (a)(4)), a felony; count 4, violation of a restraining order (§ 273.6, subd. (a)), a misdemeanor; count 5, assault with a deadly weapon upon M.N.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

(§ 245, subd. (a)(1), a felony. The jury also found the great bodily injury enhancements as to counts two, three, and four true. The trial court found the prior prison allegation to not be true and deferred ruling on the prior domestic violence allegation under section 273.5, subdivision (f)(1) until sentencing.

The trial court sentenced defendant to a total of 11 years in state prison: the upper term of five years for count 2, one year (one third the midterm) on count 5, and five years for the great bodily injury enhancements. Defendant was ordered to pay fines and fees as follows: a $160 court operations assessment fine pursuant to section 1465.8; a $120 conviction assessment fine pursuant to Government Code section 70373; a restitution fine pursuant to section 1202.4, subdivision (b); a $300 restitution fine, suspended under section 1202.45; and restitution to C.V. and M.N. under section 1202.4, subdivision (f), amount to be determined by probation.

Defendant made no objection to the imposition of any fines or fees at the time of sentencing, and he filed a notice of appeal on the date of his sentencing hearing.

*Prosecution Evidence*

On July 14, 2018, C.V. spent the night with defendant in a makeshift tent in the backyard of the defendant's mother's home. Defendant and C.V. had been in a dating relationship for two to three years, but they were not involved in a relationship in July of 2018. C.V. went to the home of defendant's mother that evening to gather her dog and other personal items. Defendant and C.V. began arguing the following morning about whether he should tell his ex-wife that he was with C.V. Both defendant and C.V. were smoking methamphetamine that morning.

The argument between defendant and C.V. continued for a couple of hours until it eventually escalated to physical violence. Defendant threatened to kill C.V. if she refused to send a specific message to his ex-wife; however, C.V. chose to tell defendant's ex-wife that she was in fact present with him. Once defendant saw the message sent by C.V., he began squeezing her neck until she was unable to breathe. C.V. started to have a

3.

seizure related to a preexisting medical condition and in response to the choking. As she came out of the seizure, C.V. could feel defendant stomping on her shoulder, side, neck, and face.

Kern County Sheriff's Deputies Fisher and Gaetzman responded to the 911 call and contacted C.V. at the scene. C.V. was crying and trembling and had difficulty answering questions. The deputies observed red marks running from her chin to her collar bone and swelling on her face. C.V. showed the deputies how defendant choked her with his fingers pressed on the center of her neck. A manager at the Forensic Services Unit of Antelope Valley Hospital examined photos of C.V.'s neck, throat, and shoulder, and she believed that the injuries were consistent with those inflicted by manual strangulation.

Defendant was stopped when M.N., the boyfriend of defendant's ex-wife's daughter, arrived and hit defendant in the face. Defendant then grabbed a sword and chased M.N. around a tree. M.N. picked up a pipe to defend himself while defendant held up the sword in an upward motion. The girlfriend of M.N. jumped in between M.N. and defendant before calling law enforcement. Defendant fled the scene on his bicycle.

Deputy Fisher located defendant less than two miles away in an empty field several hours later and taken into custody. While he was in custody, defendant was recorded telling his mother that he did not want some witnesses to get a ride to court to testify against him. Defendant also stated that C.V. better leave town because he would "finish the job" next time.

C.V. also testified regarding a prior incident in May of 2016 where defendant strangled her. Defendant was holding C.V.'s dog in the air by its neck, and C.V. tried to get him to let go of the dog. C.V. recalled defendant choking her and then punching her in the face for a total of four times until she blacked out. C.V. believed that she was going to die, and she was unable to defend herself. A police officer responded to the incident and found C.V. with redness on the right side of her neck. C.V. informed the

4.

officer that defendant also punched her on the forehead, and she accepted an emergency protective order from the officer against defendant.

***Defense Evidence***

Defendant testified that C.V. had been staying with defendant for the past month and a half prior to the incident in July of 2018. According to defendant, C.V. began punching herself in the head and then choked herself until she began having a seizure. While she was hurting herself, C.V. told defendant that she would put defendant back in jail. C.V.'s puppy began scratching at her neck, and it was being trained to help C.V. when she had seizures.

After defendant rolled C.V. onto her side to keep her from swallowing her tongue, M.N. arrived and hit defendant on the side of his head. Defendant left the scene because he was outnumbered and believed he "would have got beat up." Defendant denied kicking or choking C.V., and claimed he was unable to squeeze with his right hand. Defendant stated that C.V. severed the top part of his knuckle off and broke his finger during the May 2016 incident. In May of 2016, C.V. had been threatening to kill herself with a pocketknife in order to send him to prison. Defendant grabbed the knife from C.V. to stop her from hurting herself, which led to an injury that prevented him from straightening his hand. Defendant pled guilty to a charge of spousal abuse as a result of the May 2016 incident.

Deputy Fisher was told by M.N. that C.V. was having a seizure or unconscious when he arrived at the home because her body was convulsing. M.N. also told Deputy Fisher that defendant kicked C.V. multiple times and finally stopped after M.N. yelled at him. Defendant told Deputy Fisher that C.V. had been hitting and choking herself on the day of the incident.

Defendant admitted to a 2007 felony conviction for spousal abuse, a 2007 misdemeanor conviction for violation a restraining order, a 2008 misdemeanor conviction for providing false information to a police officer, and a 2016 misdemeanor conviction

5.

for battery.  Defendant acknowledged his jail phone call to his mother, insisted that C.V. inflicted any injuries to herself, and claimed that M.N. was lying.

During the May 2016 incident, defendant told Officer Schmick that C.V. had a knife with his fingerprints on it that she was planning to kill herself with.  C.V. informed Schmick that she pulled out the knife to defend herself when defendant was strangling her.  Schmick observed small red marks on the side of her neck, which was consistent with the statements C.V. had made.  Schmick also saw that defendant's middle knuckle was open, bleeding and swollen.  Defendant admitted to punching C.V. in the head after he threw the knife.

## DISCUSSION

### I.      Prior Domestic Violence Conviction Enhancement

Defendant contends that the trial court's true finding of a prior domestic violence conviction enhancement was not supported by substantial evidence because the documents submitted by the prosecution lacked positive identification for the underlying crime.

#### A.      *Legal Principles*

The California Supreme Court has declared that the trier of fact may "look to the entire record of the conviction to determine the substance of a prior foreign conviction." (*People v. Guerrero* (1988) 44 Cal.3d 343, 355)  "[T]he 'entire record of conviction' includes all relevant documents in the court file of the prior conviction."  (*People v. Castellanos* (1990) 219 Cal.App.3d 1163, 1172.)  A CLETS record, or "rap sheet," is admissible to prove a prior conviction.  (See *People v. Martinez* (2000) 22 Cal.4th 106, 116; *People v. Dunlap* (1993) 18 Cal.App.4th 1468, 1471–1481.)

To establish a prior conviction, the prosecutor must prove "the defendant was convicted and the conviction was of an offense within the definition of the particular statute invoked …."  (*People v. Henley* (1999) 72 Cal.App.4th 555, 562.)  The prosecution must also prove the defendant's identity as the person who suffered a prior

conviction beyond a reasonable doubt. (*People v. Saez* (2015) 237 Cal.App.4th 1177, 1190; see *People v. Soper* (2009) 45 Cal.4th 759, 777 [it is prosecution's burden to establish element of identity beyond a reasonable doubt].)

California courts have long recognized that the identity of a person may be presumed or inferred from identity of name unless controverted by other evidence. (*People v. Riley* (1888) 75 Cal. 98, 100 ["Identity of person is a deduction which the law expressly directs shall be made from identity of name"]; *People v. Lovio* (1963) 222 Cal.App.2d 79, 82 [in establishing prior conviction, identity of person is presumed from identity of name].)

### B. *Standard of Review*

"The state has the burden 'to prove beyond a reasonable doubt those alleged prior convictions challenged by a defendant.' [Citation.] In reviewing the sufficiency of the evidence of the prior convictions, we determine ' "… whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt. In making this determination, [we] must consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the [trier's conclusion], not whether the evidence proves guilt beyond a reasonable doubt." ' " (*People v. Jones* (1995) 37 Cal.App.4th 1312, 1315; see *People v. Tenner* (1993) 6 Cal.4th 559, 566–567.)

### C. *Procedural Background*

On October 24, 2018, defendant waived his right to a jury trial as to the conviction allegations relating to three prison priors and domestic violence conviction within the last seven years, and he agreed that the matter could proceed by court trial. On December 14, 2018, the trial court ordered up the People's exhibits 10 through 14 to address the prior domestic violence conviction allegation. The certified copy of defendant's rap sheet contained his full name and birthdate, which matched the name and birthdate on the

7.

certified copies of his prison records that were submitted. Defendant's rap sheet also contained multiple CDC and CII numbers that matched those stated in his prison records, and the prison records contained defendant's booking photographs, fingerprints, and name. The rap sheet set forth a 2016 misdemeanor domestic violence conviction pursuant to section 273.5, subdivision (a).

The People argued that the trial court should find the allegation true based upon the defendant's certified rap sheet. Counsel for defendant argued that the allegation was not true because the trial court was required to rely on the court docket from the prior case. The court docket was claimed to be necessary because it would have a booking photo or "anything else more than just a rap sheet."

The trial court found the allegation that defendant suffered a prior conviction within the meaning of section 273.5, subdivision (f)(1) true. In reaching its conclusion the trial court stated:

> "The other documents marked specifically starting with People's Number 10 are what is referred to as 969(b) packets from Department of Corrections. Within those packets, although they are not encompassing those convictions, there is a facility photograph of the defendant. Clearly it is him as I see him in court. Within those documents are contained his other identifying information as well, which then corresponds to his rap sheet in People's Number 14. So I think the proof is sufficient to find beyond a reasonable doubt that he did suffer that – those two prior convictions as alleged in the information that form the basis for [section] 273.5[, subdivision] (f)(1). So at this time, I do find those allegation[s] based on those convictions to be true."

**D.** *Analysis*

Defendant argues there was not sufficient evidence to prove that he was the same person convicted of the prior domestic violence crime used to enhance his sentence. His argument at the trial court was primarily based on the lack of a booking photograph or certified copies of court records. The People submitted a certified copy of defendant's rap sheet to support their request that the enhancement be found true. The trial court

8.

found that the identifying information contained in the defendant's rap sheet and prison records was sufficient to find the prior domestic violence allegation true beyond a reasonable doubt. The court specifically found that the photograph contained in defendant's prison records matched his physical appearance while he was present in court and that the identifying information in the prison records matched his rap sheet.

In *People v. Saez, supra,* 237 Cal.App.4th at p. 1190, relied upon by the People, the court rejected an insufficient proof of identity argument based on records which established the defendant had the same name and birthdate and had lived on the same street as the individual who suffered prior convictions. The court found the defense's argument that two people with the same name could have lived on the same street entirely unpersuasive. " '[I]n the absence of countervailing evidence, … identity of person may be presumed, or inferred, from identity of name.' [Citation.] The identity of birth dates is also highly significant. [Citation.] And, although the house numbers of the addresses on East Garfield Street varied, we agree with the trial court that coincidence is not a reasonable explanation for the identical names, birth dates, and streets." (*Id.* at p. 1190.) The court found that fingerprints and photographs were not required. (*Id.* at p. 1191.)

In the present case, the trial court used certified copies of the prison records, which contained matching names, dates of birth, court case numbers, and unique CDC and CII numbers to those listed in the defendant's rap sheet. Defendant does not identify any countervailing evidence except to argue that additional evidence was necessary. Both forms of evidence are admissible and may constitute substantial evidence of the truth of a prior conviction allegation. (§ 969b; *People v. Miles* (2008) 43 Cal.4th 1074, 1082–1083.) Therefore, we reject defendant' claim to the contrary.

We conclude the trial court's true findings on the prior domestic violence conviction allegations are supported by substantial evidence. (See *People v. Jones*, *supra*, 37 Cal.App.4th at p. 1315 [the test for evaluating the sufficiency of the evidence

9.

underlying the trier's conclusion is " ' "whether substantial evidence supports the [trier's conclusion], not whether the evidence proves guilt beyond a reasonable doubt." ' "].)

## II.     Assembly Bill No. 518 and Senate Bill No. 567

During the pendency of this appeal, Governor Newsom signed two new laws, Assembly Bill No. 518 (2021–2022 Reg. Sess.), which change existing law regarding the trial court's discretion to stay a sentence under section 654 (Stats. 2022, ch. 441, § 1), and Senate Bill No. 567 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 731), which amends section 1170.  Both laws were signed into law at a regular session of the Legislature and therefore went into effect on January 1, 2022.  (Cal. Const., art. IV, § 8; Gov. Code, § 9600, subd. (a); *People v. Camba* (1996) 50 Cal.App.4th 857, 865.)

We ordered the parties to submit supplemental briefing to consider the impact of Assembly Bill No. 518 on this matter.  In supplemental briefing, defendant contends this case must be remanded for resentencing in light of the passage of Assembly Bill No. 518.  Defendant also contends the case should be remanded for resentencing in light of the passage of Senate Bill No. 567, which generally mandates the middle term as the presumptive sentence for a term of imprisonment unless certain circumstances, other than a prior conviction, have been stipulated to or found true beyond a reasonable doubt.  The People argue resentencing is not necessary because the jury would have found it true that C.V. was particularly vulnerable beyond a reasonable doubt, and they contend the trial court would not have exercised its discretion to stay the sentence on count 2.

### A.     *Senate Bill No. 567*

Prior to its amendment by Senate Bill No. 567, section 1170 provided, in relevant part:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."  (Former § 1170, subd. (b).)  With the passage of Senate Bill No. 567, effective January 1, 2022, section 1170 provides, in part:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court

10.

shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1).)

The exceptions provided in paragraph (b)(2) of section 1170 provide, in part, that the court may exceed the middle term "only when there are circumstances in aggravation of the crime that justify" the greater sentence and where "the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) Except in the case of enhancements, a court is also permitted to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id*. at subd. (b)(3).) A court continues to have the discretion (and, in some cases, is mandated) to impose the lower of the three specified terms when sentencing a defendant for a crime. (*Id*. at subd. (b)(6), (7).) Thus, Senate Bill No. 567 confers a substantial benefit on a defendant at the time of sentencing.

We conclude defendant is entitled to the benefit of Senate Bill No. 567. Senate Bill No. 567 amends section 1170 to make the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist. (Stats. 2021, ch. 731, § 1.3.) The record indicates the trial court sentenced defendant to the upper term on counts 2 through 4. At sentencing, it listed certain factors in aggravation, including the fact that it found C.V. to be particularly vulnerable. However, the record does not indicate a jury (or the court) found these factors true beyond a reasonable doubt or that defendant stipulated to them, which is now required under Senate Bill No. 567. Thus, the sentence imposed on defendant is contrary to the provisions of the newly enacted statute. Moreover, nothing in Senate Bill No. 567 suggests an intent that the legislation apply prospectively

11.

only. Because defendant's case is not yet final, he is entitled to the benefit of Senate Bill No. 567. Accordingly, resentencing is necessary.

## B.     *Assembly Bill No. 518*

Prior to its amendment by Assembly Bill No. 518, section 654 provided: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Former § 654, subd. (a).) Assembly Bill No. 518 amended section 654 effective January 1, 2022, to provide, in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Thus, a trial court is no longer required to impose a sentence under the crime providing for the longest possible sentence but may sentence a defendant under any one of the applicable crimes.

Absent a contrary showing, we presume the trial court followed section 654 as it existed immediately prior to January 1, 2022, in sentencing defendant. (*People v. Mosely* (1997) 53 Cal.App.4th 489, 496–497; Evid. Code, § 664 [presumption that official duty has been regularly performed].) The current version of section 654 "provides the trial court new discretion to impose a lower sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.) As with Senate Bill No. 567, there is no indication that the Legislature did not intend Assembly Bill No. 518 to apply retroactively to a defendant whose case is not yet final. Accordingly, a defendant whose case is not yet final is entitled to its benefit. (*In re Estrada* (1965) 63 Cal.2d 740, 744–746.)

Here, the trial court imposed an upper sentence of five years on count 2 (infliction of corporal injury) and stayed the sentence on counts 3 (assault by means likely to produce great bodily injury) and 4 (violation of a restraining order) pursuant to former section 654. The court was required to follow former section 654 and choose a term of

12.

imprisonment from count 2 which provides for a possible two-, four-, or five-year sentence and stay the sentence for counts 3 and 4 which provide for possible sentences of two, three, four years and 16 months, two years, and three years respectively.  (§§ 18, subd. (a), 136.1, subd. (c), 422, subd. (a).)  With the passage of Assembly Bill No. 518, the court now has discretion to choose a term of incarceration applicable to either charge, while staying the term applicable to the other charge.

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.'  [Citation.]  In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' "  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)  There is no clear indication what sentencing decisions the trial court would have made if it had possessed the sentencing discretion given by Assembly Bill No. 518.

We reject the People's contention that the trial court's imposition of upper terms on counts 2, 3, and 4 "clearly indicates" that it would not exercise its newfound discretion to stay defendant's sentence on count 2.  The trial court's prior decision is only an indication of one particular sentencing decision.  "We cannot speculate from the court's statements and decision as to one sentencing issue to divine what the court would have done if it had broadened discretion on another sentencing issue."  (*People v. Bell* (2020) 47 Cal.App.5th 153, 200.  On remand, defendant is entitled to a full resentencing, consistent with the amendments to section 654.  (See *People v. Buycks* (2018) 5 Cal.5th

13.

857, 881.)  However, we take no position on how the trial court should exercise its discretion when it resentences defendant.

In sum, a remand for resentencing is appropriate so that the trial court can sentence defendant in accordance with Assembly Bill No. 518 and Senate Bill No. 567. Because this matter must be remanded under the full resentencing rule, defendant's challenge to the fines and fees imposed, advanced pursuant to *Duenas,* is moot and we do not consider the claim.  Defendant may raise his challenge to the fines, fees, and assessments in the first instance below.

## DISPOSITION

The judgment of conviction is affirmed.  The matter is remanded to the trial court for a full resentencing, consistent with the legislative changes discussed herein, effective January 1, 2022.  At the resentencing hearing, the trial court shall resentence defendant consistent with the changes made by Senate Bill No. 567 and Assembly Bill No. 518.

POOCHIGIAN, ACTING P. J.

WE CONCUR:

SMITH, J.

SNAUFFER, J.

14.