Filed 10/13/23 P. v. Garcia CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUSTIN MATTHEW GARCIA,<br><br>    Defendant and Appellant. | B322633<br>(Los Angeles County<br> Super. Ct. No. TA112289) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura R. Walton, Judge. Reversed and remanded, with directions.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Blythe J. Leszkay, Deputy Attorney General, for Plaintiff and Respondent.

In 2011, defendant and appellant Justin Matthew Garcia pleaded no contest to one count of attempted murder. In 2022, appellant filed a petition for resentencing under Penal Code section 1172.6.[1] The trial court summarily denied the petition, finding appellant ineligible for relief based on facts obtained from a preliminary hearing transcript.

On appeal, appellant contends the trial court improperly relied on the preliminary hearing transcript to deny his petition without holding an evidentiary hearing. We agree. We reverse the order summarily denying appellant's petition and direct the trial court to vacate its prior order, issue an order to show cause, and hold an evidentiary hearing.

## BACKGROUND

### A.    Evidence at the Preliminary Hearing

At the July 2010 preliminary hearing, Michael Manning testified that he, his mother Gloria Manning, and three other people were sitting at the edge of a garage adjacent to Michael's home drinking coffee around 8:30 a.m. on March 30, 2010.[2] Michael's home was situated one house away from a residential intersection. Looking through the opening in his garage, Michael saw a gold van drive by his house and park on the corner of the nearby intersection. Michael saw a man wearing a white and black hat with the letter "T" and a hooded sweatshirt sitting in a passenger-side seat of the van. Michael did not notice the driver of the van.

---

[1]    Subsequent references to statutes are to the Penal Code.

[2]    For ease of reading, we refer to Michael and Gloria by their first name.

Michael testified that about a minute later, the man wearing the black and white hat and hooded sweatshirt walked 15 to 20 feet around the corner of the intersection, stepped off the sidewalk, and stood in the street facing Michael and the others.[3] As the man fired around seven shots at the group, everyone but Michael, who was in a wheelchair, ran inside the house. Michael saw the shooter directly at some point but acknowledged the presence of a van parked in the driveway between himself and the shooter. Gloria's car, which was positioned somewhere between Michael and the shooter in the street, was hit with bullets. Michael turned his head away from the shooter while attempting to pick himself up. He did not see the shooter run away. When deputy sheriffs responded to his home several minutes later, Michael described the van and the shooter.

Several minutes after Deputy Sheriff Isidro Martinez responded to the shots-fired call at Michael's home, Deputy Martinez was called to a nearby intersection where appellant and codefendant Robert Lopez had been apprehended. According to Detective Albert Carrillo, when appellant and codefendant Lopez were initially detained, codefendant Lopez (and not appellant) was wearing a black and white hat. Detective Carrillo testified it was "not uncommon for gang members to either switch clothing . . . to confuse the victims and witnesses . . . ." Michael identified appellant as the shooter at a field show up.

During an interview with Deputy Martinez, codefendant Lopez identified himself as a member of the Tortilla Flats gang. He also told Deputy Martinez he had driven the van on the day of

---

[3] When the man turned the corner, Michael noticed him pulling the hood over his hat. The man also wore brown gloves.

the shooting.[4]  The parties stipulated that the Compton Varrio Tortilla Flats gang was a criminal street gang under former section 186.22.  Detective Carrillo testified that he knew appellant and codefendant Lopez as members of the Compton Varrio Tortilla Flats gang.  Detective Carrillo also testified that members of the gang wear hats with the letter "T" to signify the short name of the gang ("T Flats").

## B.     Information, Plea, and Sentencing

By information, appellant and codefendant Lopez were both charged with four counts of attempted willful, deliberate, and premeditated murder (§§ 664, 187, subd. (a), counts 1–3, 7) and four counts of assault with a firearm (§ 245, subd. (a)(2), counts 4–6, 8).  On each count of attempted murder, the information alleged appellant and codefendant Lopez "unlawfully and with malice aforethought attempt[ed] to murder" Manning and the other victims.  The information also alleged the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), and that a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (b)–(c), (e)(1)).

Appellant and his trial counsel appeared at a pretrial conference held on December 15, 2010.  As provided in the

---

[4]     Detective Dennis Salcedo testified that he took control of codefendant Lopez's cell phone when appellant and Lopez were detained.  Detective Lopez looked at Lopez's messages and saw the following message sent on March 30 at 8:25 a.m. to a known Compton Varrio Tortilla Flats gang member:  "'We need bullets, ese.  Me and Little G just dropped a fruta rite [*sic*] now.'"  According to Detective Carrillo's testimony, the Fruit Town gang is a rival to the Compton Varrio Tortilla Flats gang.

minute order of the conference, appellant "personally withdr[ew his] plea of not guilty to count [one] and plead[ed] nolo contendere with the approval of the court to a violation of section 664[-]187(a) PC in count [one]. The court [found appellant] guilty." "[Appellant also] admit[ted] allegation pursuant to Penal Code section 12022.53(c)."[5] The court found a factual basis for the plea, accepted the plea, and sentenced appellant to the upper term of nine years on count one plus 20 years for the firearm enhancement. The court dismissed the remaining counts and enhancement allegations. The record does not include a reporter's transcript of the pretrial conference.

## C.     Section 1172.6 Proceedings

In April 2022, appellant filed a petition to vacate his attempted murder conviction under section 1172.6. In his petition, appellant alleged he had been convicted of attempted murder and "could not presently be convicted of . . . attempted murder because of changes made to [sections] 188 and 189, effective January 1, 2019." The court appointed appellant counsel and accepted a response brief from the People, which attached the July 2010 preliminary hearing transcript as an exhibit.

At a hearing on appellant's petition on August 1, 2022, the parties submitted on the briefing. Based on the preliminary hearing testimony, the court ruled it was "clear that [appellant] was the actual shooter in this case. And the only theory of

---

[5]     The minute order does not indicate whether appellant admitted that he had personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), or admitted a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (e)(1)).

5

liability is direct liability on the attempted murder." After quoting the preliminary hearing testimony, the court found appellant had been prosecuted as the actual shooter and had not been prosecuted under felony murder or the natural and probable consequences doctrine. Finding appellant ineligible for relief as a matter of law, the court summarily denied the petition.

## DISCUSSION

### A.  Section 1172.6

Through Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 1), the Legislature clarified the felony-murder rule and eliminated the natural and probable consequences doctrine to ensure that any murder conviction and attached sentence is commensurate with individual culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*); accord, § 189, subd. (e).) The Legislature also added former section 1170.95 (now section 1172.6), pursuant to which individuals convicted of felony murder or murder under the natural and probable consequences doctrine may petition for vacatur of their convictions and resentencing. (§ 1172.6, subd. (a).)

Effective January 2022, Senate Bill No. 775 added persons convicted of "attempted murder under the natural and probable consequences doctrine," to subdivision (a) of section 1172.6. Under amended section 1172.6, persons convicted of "attempted murder, . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of . . . attempted murder" are entitled to vacatur of their conviction and subject to resentencing on any remaining count if they could not presently be convicted because of changes to Section 188 or 189

6

made effective by Senate Bill No. 1437.  (Stats. 2021, ch. 551, § 2; see § 1172.6, subd. (a).)

In relevant part, a section 1172.6 petition must allege (1) a complaint, information, or indictment was filed against the petitioner that allowed the prosecution to pursue an attempted murder conviction under the natural and probable consequences doctrine; (2) the petitioner was convicted of attempted murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder; and (3) the petitioner could not presently be convicted of attempted murder because of changes to Section 188 or 189 made effective by Senate Bill No. 1437.  (§ 1172.6, subd. (a).)

Within 60 days after service of a facially compliant petition, the prosecution must file and serve a response, after which the court must hold a hearing "to determine whether the petitioner has made a prima facie case for relief.  If the petition makes [this] showing . . . the court shall issue an order to show cause" and set an evidentiary hearing.  (§ 1172.6, subd. (c).)

## B. Prohibited Factfinding Occurred at the Prima Facie Stage

Appellant contends the court prejudicially erred by weighing facts established by the testimony from his preliminary hearing at the prima facie stage of review.  We agree.

### 1. *Governing Law:  The Record of Conviction*

Upon the filing of a facially compliant petition and an opportunity to submit briefing, the trial court must hold a hearing to determine whether the petitioner made a prima facie case for relief.  (§ 1172.6, subd. (c).)  At this prima facie stage, the

7

parties "can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief" under section 1172.6, subdivision (c). (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

The record of conviction consists of "those record documents reliably reflecting the facts of the offense for which the defendant [has been] convicted." (*People v. Reed* (1996) 13 Cal.4th 217, 223.) Such documents may include the charging document and plea form; transcripts of the preliminary hearing and trial; jury instructions, verdicts, and special findings; probation report; abstract of judgment; and any appellate opinion(s). (See, e.g., *Lewis*, *supra*, 11 Cal.5th at p. 972; *People v. Strong* (2022) 13 Cal.5th 698, 703–704, 721 (*Strong*); *People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*); *People v. Ervin* (2021) 72 Cal.App.5th 90, 106.) Review of these record documents at the prima facie stage is both practical and consistent with section 1172.6. "The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder [and attempted murder] culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis*, *supra*, at p. 971.)

Despite a resentencing court's ability to review any portion of a petitioner's record of conviction, that review is "limited." (*Lewis*, *supra*, 11 Cal.5th at pp. 971, 972.) "Like the analogous prima facie inquiry in habeas corpus proceedings, "'the court takes petitioner's factual allegations as true and makes a

preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause"'" and hold an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "'[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]" (*Ibid.*; see also *People v. Duvall* (1995) 9 Cal.4th 464, 475 [order to show cause must issue in habeas proceeding if the court makes a "preliminary determination that the petitioner has pleaded sufficient facts, that, if true, would entitle him to relief"]; *In re Sassounian* (1995) 9 Cal.4th 535, 547 [prima facie determination "is truly 'preliminary': it is only initial and tentative, and not final and binding"].)

Given the Legislature's intent to enact section 1172.6 by setting "'the prima facie bar . . . very low,'" a resentencing court must not engage in "'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) Nor may the court "'decide unresolved factual issues[ ] that involve credibility determinations . . . .'" (*Harden, supra*, 81 Cal.App.5th at p. 51, quoting *People v. Duchine* (2021) 60 Cal.App.5th 798, 811–812 (*Duchine*).)

In view of these principles, a resentencing court may deny a resentencing petition at the prima facie stage if readily ascertainable facts in the record of conviction refute the allegations in the petition and make the petitioner "ineligible for relief *as a matter of law*." (*Harden, supra*, 81 Cal.App.5th at p. 52; see *Duchine, supra*, 60 Cal.App.5th at p. 815.) "As a matter of law" means the record of conviction *conclusively* refutes the allegations of the petition without resort to factfinding, weighing of evidence, or credibility determinations. (*People v. Lopez* (2022)

78 Cal.App.5th 1, 14; accord, *Lewis, supra,* 11 Cal.5th at pp. 970–972; *People v. Flores* (2022) 76 Cal.App.5th 974, 991 (*Flores*).)

2. *The Conflict in Authority on Preliminary Hearing Transcripts*

It is not always clear to resentencing courts what can be considered in deciding whether the record of conviction conclusively refutes the allegations of a section 1172.6 petition, as the law in this area continues to evolve. Courts are presently divided as to whether or to what extent a preliminary hearing transcript may be used to determine a petitioner's ineligibility for resentencing under section 1172.6 as a matter of law.

One line of authority has deemed it appropriate to rely on uncontroverted facts appearing in a preliminary hearing transcript. In *People v. Patton* (2023) 89 Cal.App.5th 649 (*Patton*), review granted June 28, 2023, S279670, the defendant pleaded no contest to attempted murder and admitted he personally used and discharged a firearm. (*Id.* at pp. 652–653.) Years later, the defendant filed a resentencing petition. (*Id.* at p. 654.) The People opposed the petition on the ground the defendant was "'the direct perpetrator [and] could not have been convicted of attempted murder based upon the natural and probable consequences doctrine.'" (*Ibid.*) At the prima facie hearing, the trial court informed the parties it had reviewed transcripts of the preliminary hearing and change of plea. (*Ibid.*) Based on testimony from the preliminary hearing, the court found the defendant was "'the shooter, and there was only one shooter'" during the events giving rise to the no contest plea. (*Ibid.*) The court summarily denied the petition. (*Ibid.*)

10

In affirming the summary denial in *Patton*, the court rejected the argument by the defendant that the trial court had impermissibly engaged in factfinding, noting: "The sworn testimony [at the preliminary hearing], based on surveillance video of the crime, that [the defendant] committed the shooting was and is uncontroverted." (*Patton*, *supra*, 89 Cal.App.5th at p. 658.) The court found the defendant had never "assert[ed] he was not the sole and actual perpetrator" or provided "any theory to support his implicit contention now that he was an accomplice and not the person who actually shot [the victim]. Nor, on appeal, has [the defendant] even suggested what facts he has to demonstrate that someone else shot [the victim] and he was merely an accomplice." (*Id.* at pp. 657, 658, fn. 5.) Finding the uncontroverted record established the defendant's role as "the sole and actual perpetrator of the attempted murder" with no other individual involved, the court concluded the defendant was ineligible for relief as a matter of law. (*Id.* at p. 657; accord, *People v. Pickett* (2023) 93 Cal.App.5th 982, 989–991 [the defendant "declined to file a [reply] brief or raise any factual issue or argument" in support of his resentencing petition], review granted Oct. 11, 2023, S281643.)[6]

Under another line of authority, a trial court may not use testimony from a preliminary hearing at the prima facie stage absent a stipulation by the petitioner that the transcript provided a factual basis for the plea. In *People v. Davenport* (2021) 71

---

[6] In its order granting review, the Court stated that *Patton* "may be cited, not only for its persuasive value, but also for the limited purpose of establishing the existence of a conflict in authority that would in turn allow trial courts to exercise discretion . . . , to choose between sides of any such conflict." (S279670.)

11

Cal.App.5th 476 (*Davenport*), the defendant pleaded no contest to second degree murder with a firearm enhancement. (*Id.* at pp. 478–479.) Thereafter, the defendant filed a resentencing petition, the court appointed counsel, and the parties submitted additional briefing. (*Id.* at p. 480.) Following a hearing, the court summarily denied the resentencing petition based in relevant part on the "facts taken from the preliminary hearing transcript that [the defendant] had approached a car . . . , and killed the victim by shooting him at close range." (*Ibid.*)

The *Davenport* court reversed. The court agreed with the defendant's contention "that the trial court erred in considering facts from the preliminary hearing transcript here because [the defendant] did not stipulate to the transcript as a factual basis for his plea." (*Davenport*, *supra*, 71 Cal.App.5th at p. 481.) In reaching this conclusion, the court reasoned the prima facie stage of review "is a test of the petitioner's pleaded allegations, not an inquiry into the truth of those allegations and the credibility of the evidence on which they may rely." (*Id.* at p. 483.) The court continued:

> "The exception, for 'readily ascertainable facts' in the record of conviction that ""refut[e] the allegations made in the petition""" (*Lewis*, *supra*, 11 Cal.5th at p. 971), bars a petitioner from pleading things that the record of conviction necessarily establishes are untrue . . . . If the exception were to be read more broadly, allowing inquiry into the historical facts that may appear in the court's files but that were never admitted by the petitioner as the factual basis for a plea, the exception would swallow the rule and

12

convert the prima facie inquiry into a factual contest, which is reserved for evidentiary hearings at the section [1172.6], subdivision (d) stage.  Because [the defendant] did not stipulate that the preliminary hearing transcript provided the factual basis for his no contest plea, the transcript does not *conclusively* 'refute' his allegations."  (*Davenport*, *supra*, 71 Cal.App.5th at p. 483.)

The *Davenport* court also questioned the reasoning in cases reaching a contrary conclusion.  "In our view, by focusing on what [a petitioner] *could* have proffered at the prima facie stage to counter the evidence set forth in the preliminary hearing transcript, the . . . analysis allocates to petitioners an evidentiary burden that should be on the state (§ [1172.6], subd. (d)(3)), and effectively raises '"the prima facie bar [that] was intentionally and correctly set very low"' (*Lewis*, *supra*, 11 Cal.5th at p. 972)." (*Davenport*, *supra*, 71 Cal.App.5th at p. 483, fn. omitted; accord, *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1161, 1167–1168 (*Nguyen*) [considering preliminary hearing transcript in view of stipulation it provided a factual basis for plea].)

The third line of authority prohibits any use of testimony from a preliminary hearing to determine a petitioner's ineligibility for relief, even in cases in which the defendant previously stipulated to a factual basis for the plea.  (See *People v. Rivera* (2021) 62 Cal.App.5th 217, 224 (*Rivera*) ["a defendant who stipulated to a grand jury transcript as the factual basis of the plea may make a prima facie showing of eligibility for relief by identifying a scenario under which he or she was guilty of murder only under a now-invalid theory, even if the record of

13

conviction does not demonstrate that the indictment rested on that scenario"]; accord, *Flores*, *supra*, 76 Cal.App.5th at pp. 987–992; *People v. Eynon* (2021) 68 Cal.App.5th 967, 976, 978–979 (*Eynon*) [while the defendant admitted "he was liable for a murder committed with malice, deliberation, and premeditation, he did not admit that *he acted with* malice, deliberation, or premeditation"].)  This rule derives from prohibitions on factfinding in analogous sentencing proceedings (see *Rivera*, *supra*, at p. 235, citing *People v. French* (2008) 43 Cal.4th 36, 50–52 [aggravating sentencing circumstance] (*French*); *People v. Saez* (2015) 237 Cal.App.4th 1177, 1206–1207 [determination of prior strike]) and from the Legislature's intent to set a ""'very low'"" bar at the prima facie stage.  (*Flores*, *supra*, at p. 991, quoting *Lewis*, *supra*, 11 Cal.5th at p. 972.)

   3.   *Analysis*

   Although opinions differ on whether or to what extent a preliminary hearing transcript may be used at the prima facie stage of review, they uniformly recognize that a transcript may not be used to decide unresolved factual issues implicating credibility determinations or the weighing of evidence.  Because we conclude factfinding occurred at the prima facie stage of review in this case, we must reverse.

   At the time appellant and codefendant Lopez were charged, an accomplice to the perpetrator of attempted murder could be convicted of premeditated attempted murder directly or under the natural and probable consequences doctrine without having an intent to kill.  (*People v. Favor* (2012) 54 Cal.4th 868, 879–880 ["it is only necessary that the attempted murder 'be committed by one of the perpetrators with the requisite state of mind'"].)

14

The information does not establish appellant's ineligibility for resentencing relief as a matter of law.  Appellant and codefendant Lopez were both charged with attempted willful, deliberate, and premeditated murder (§§ 664, 187, subd. (a)).  "[G]iven that the allegation that a murder was committed 'willfully, unlawfully, and with malice aforethought' is a generic charge permitting the prosecution to proceed on *any* theory of murder, we cannot conclude that by admitting to the murder as charged [the petitioner] admitted that he acted with actual malice, . . . ."  (*Rivera, supra,* 62 Cal.App.5th at p. 234; accord, *Flores, supra,* 76 Cal.App.5th at p. 987; *Eynon, supra,* 68 Cal.App.5th at pp. 970–971.)

Appellant's no contest plea did not constitute an admission as to the manner in which he committed attempted murder either.  (See *French, supra,* 43 Cal.4th at p. 49; *People v. Delgado* (2008) 43 Cal.4th 1059, 1066 ["if the prior conviction was for an offense that can be committed in multiple ways, and the record of conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense"].)  As the record of appellant's conviction does not include a reporter's transcript of the pretrial conference at which he changed his plea, the factual basis on which that plea was based remains unclear.  The information and plea do not establish the theory of appellant's conviction under a direct perpetrator theory, direct aiding and abetting, or aiding and abetting under the natural and probable consequences doctrine.

The People purport to rely on excerpts of preliminary hearing testimony to prove appellant was the actual shooter.  They note that because appellant has not disputed this testimony or identified any evidence to show he was not the shooter, the

15

preliminary hearing testimony is undisputed and conclusively shows appellant was the only shooter. As we interpret the argument, the People contend that because the evidence indisputably shows he was the only shooter, appellant must have pleaded guilty to the charge as the direct perpetrator who acted with the intent to kill.

We reject this argument for several reasons. First, it is questionable whether the preliminary hearing transcript provides a proper basis upon which to refute the allegations in his petition as a matter of law, particularly as appellant never stipulated the transcript provided a factual basis for his no contest plea. (*Davenport*, *supra*, 71 Cal.App.5th at p. 483; see *Nguyen*, *supra*, 53 Cal.App.5th at pp. 1167–1168.)

Second, the argument ignores excerpts of the transcript casting doubt on the identity of the shooter in this case. Michael testified two cars obstructed his view of the shooter at various times leading up to and during the shooting. When appellant and codefendant Lopez were apprehended, it was codefendant Lopez who was wearing the hat Michael associated with the shooter. This case does not involve the "sole perpetrator" scenario presented in *Patton*. (See *Patton, supra*, 89 Cal.App.5th at pp. 652–653, 657.)

Finally, we decline to impose the additional burden implicit in the People's argument, which would require the petitioner to make an offer of proof or submission of evidence to rebut any facts taken from a preliminary hearing transcript. (See *Davenport*, *supra*, 71 Cal.App.5th at p. 483; cf. *Strong*, *supra*, 13 Cal.5th at p. 713 ["We agree . . . that a defendant *may* still challenge prior adverse special circumstance findings in other types of proceedings, just as the defendant could have before

16

section 1172.6 was enacted.  But nothing in section 1172.6 says that a defendant *must* always do so before seeking resentencing."].)

## C.    Admission to the Firearm Enhancement Did Not Conclusively Establish Appellant's Ineligibility

Appellant also asserts his admission to the firearm enhancement did not constitute an admission he was the actual perpetrator who committed the shooting with the intent to kill.  Again, we agree.

To begin with, it is unclear what firearm enhancement appellant admitted at the pretrial conference.  As the record of conviction contains no transcript of the conference, all we have is a minute order stating that appellant "admits allegation pursuant to Penal Code section 12022.53(c)."  However, the information never alleged a section 12022.53, subdivision (c) enhancement.  Instead, the information alleged as part of every attempted murder count "that a principal personally and intentionally discharged a firearm, a handgun, within the meaning of Penal Code section 12022.53(c) and (e)(1)."  Put more simply, the information alleged that a principal in the offense personally and intentionally discharged a firearm while committing a felony for the benefit of a criminal street gang.

Viewing the minute order and information together, it is unclear if (1) appellant admitted an uncharged allegation that he had personally and intentionally discharged a firearm (§ 12022.53, subd. (c)); or (2) he admitted a charged allegation that he was subject to the enhancement as a non-shooter because he violated the gang enhancement statute (§ 186.22, subd. (b)) and another principal in the offense (presumably codefendant

17

Lopez) personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (e)(1)). The parties' dispute on these scenarios—appellant contends he admitted the second scenario; the People contend he admitted the first—is additional proof that a court cannot make a conclusive finding on either scenario.

Assuming under the first scenario that appellant admitted an allegation directly under section 12022.53, subdivision (c), his admission did not establish as a matter of law that he was the actual perpetrator of the shooting or acted with intent to kill. In *People v. Offley* (2020) 48 Cal.App.5th 588 (*Offley*), the court held that because "an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*Id.* at p. 598.) As it does now, section 12022.53, subdivision (d), provided a sentence enhancement for persons who personally and intentionally discharge a firearm and proximately cause great bodily injury in the commission of attempted murder or other specified felony. Noting this limited language, the *Offley* court found section 12022.53, subdivision (d) "does not refer to an 'intent to achieve any additional consequence.' [Citation.] It is thus a general intent enhancement, and does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death." (*Id.* at p. 598.)

Here, subdivision (c) of section 12022.53 is similar to subdivision (d) but omits the requirement the shooting proximately caused great bodily injury or death. (§ 12022.53, subd. (c) [prescribing an additional and consecutive 20-year term of imprisonment for committing attempted murder by "personally and intentionally discharg[ing] a firearm"].) It requires the

18

intentional discharge of a firearm but does not refer to an intent to achieve any additional consequence. While an inference could be made appellant was the actual shooter who acted with the intent to kill, as we have discussed appellant's plea did not include an admission he was the sole shooter involved in this case, that he fired the bullets in front of Michael's residence, or that he intended to shoot or kill Michael. Thus, at this stage of the proceedings the court could not so conclude as a matter of law.

## DISPOSITION

The order summarily denying appellant's petition for resentencing under section 1172.6 is reversed and the matter is remanded. On remand, the trial court is directed to vacate its prior order denying appellant's petition, issue an order to show cause, and hold an evidentiary hearing pursuant to section 1172.6, subdivision (d). We express no opinion on the merits of the resentencing petition at that hearing.


MORI, J

We concur:


COLLINS, Acting P. J.


ZUKIN, J.

19